IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Criminal Action No. 1:07-CR-286 |
| v. : | |
| : | (Chief Judge Kane) |
| GREGORY J. SALKO, : | |
| Defendant : | |

### MEMORANDUM

Before the Court is Defendant Gregory Salko's motion for an intradistrict transfer pursuant to Federal Rule of Criminal Procedure 18. (Doc. No. 32.) In the motion, Salko seeks to transfer the above-captioned case to the Scranton division for further proceedings. For the reasons that follow, his motion will be granted.

I.  BACKGROUND

On July 18, 2007, a grand jury charged Salko with two counts of health-care fraud in violation of 18 U.S.C. § 1347 and seventeen counts of making false statements relating to health-care matters in violation of 18 U.S.C. § 1035. (Doc. No. 1.) The indictment specifically charges that Salko, a licensed Pennsylvania physician, defrauded Medicare by billing for medical services that he allegedly never performed on two of his patients, Peggy Rogers and Patient X. (Doc. No. 1, at 4, 11.) Both Rogers and Patient X suffered from breast cancer, and Rogers ultimately died from metastatic breast cancer.

According to the indictment, Salko allegedly "caused employees . . . to electronically submit claims to Medicare representing that [he] had provided medical services to Rogers on [nine] separate occasions [but that he] did not render the medical services he claimed to have provided." (Doc. No. 1, at 4-5.) From these electronically submitted claims, Salko received compensation from Medicare.

Furthermore, it is alleged that Salko attempted to conceal his activities by "caus[ing] employees . . . to prepare false Progress Notes that falsely represented that [he] had performed detailed physical examinations of Rogers," and that "hard copies [of the Progress Notes were] to be placed in Rogers' medical chart" and "electronic versions . . . to be retained in the computer files." (Doc. No. 1, at 5.)  Similarly, Salko is alleged to have submitted eight claims to Medicare and created eight false Progress Notes in connection with Patient X.

On August 1, 2007, Salko pleaded not guilty to the indictment (Doc. No. 11), and was released on personal recognizance (Doc. No. 13).  Pursuant to a scheduling order issued by the Court, Salko filed numerous motions, among which is Salko's motion to transfer.  That motion is before the Court.

## II. DISCUSSION

In his motion to transfer, Salko correctly concedes that he has no "constitutional right to be tried in the place of his residence." Zicarelli v. Gray, 543 F.2d 466, 479 (3d Cir. 1976). However, Federal Rule of Criminal Procedure 18 authorizes the Court to transfer venue, after giving "due regard for the convenience of the defendant and the witnesses, and the prompt administration of justice." Fed. R. Crim. P. 18; United States v. Addonizio, 451 F.2d 49, 61-62 (3d Cir. 1972).

Here, Salko argues that transfer to Scranton is appropriate because he and his family live and work in Scranton and because many of the witnesses are located in Scranton, including all of the employees at his business.  In addition, two of the three Government expert witnesses and the personnel at the medical facilities where Rogers and Patient X later received treatment for breast cancer are located in the Scranton area.  Salko further argues that the majority of the facts

underlying the alleged crime occurred primarily near Scranton and that most of the evidence, including the medical records at issue, are located in Scranton. Finally, Salko indicates that transfer should be granted because his counsel is based in Scranton.

The Government objects to a transfer on the grounds that several of its fact witnesses, including those employees responsible for processing the Medicare claims, and one of its expert witnesses are located near Harrisburg. Furthermore, the Government argues that although Salko submitted his claims from Scranton, the situs of the crime is actually Camp Hill, Pennsylvania,[1] where his claims were processed. Finally, the Government argues that holding trial in Harrisburg would be preferable to Scranton because of the possibility that a trial in Scranton might garner unwanted media attention.

After carefully considering the parties' arguments, the Court finds that a transfer of the proceedings to Scranton is appropriate in this case. Based on the circumstances, holding trial in the Scranton division would be substantially more convenient to the defendant and the vast majority of witnesses, including many of the government witnesses. Indeed, the Government has even made the extraordinary request that one of its fact witnesses be permitted to testify by way of videotaped deposition so as to avoid complications in transporting her to Harrisburg. (See Doc. No. 75.) Moreover, given that much of the evidence that would likely need to be introduced is in Scranton, trial there would promote the prompt administration of justice.[2]

---

[1] The indictment erroneously identifies Camp Hill as being located in Dauphin County. It is not; Camp Hill is located in Cumberland County.

[2] The Court notes that Salko does not necessarily seek a different judge to preside over the case. However, as a practical concern, trial is expected to last well over a month in the case. Given the need to ensure that other matters before the Court receive prompt resolution, the interests of judicial administration would be unduly burdened if the undersigned was to preside

Finally, holding trial in Scranton gives deference to the preference—as expressed in the Local Rules of this Court—of holding trial nearest the residence of the defendant. M.D. Pa. L.R. 83.6.1.[3]

### III. CONCLUSION

For the foregoing reasons, Salko's motion to transfer will be granted. An appropriate order follows.

---

over trial in Scranton. Thus, for purely pragmatic reasons, it will be necessary to reassign the case to a judge in the Scranton division.

[3] Local Rule 83.6.1 provides that "[e]very action shall be tried at the place in the district designated for the holding of court which is nearest to the residence or principal place of business of the defendant or the residence or principal place of business of the principal defendant of [sic] multiple defendants . . . ." M.D. Pa. L.R. 83.6.1.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | **Criminal Action No. 1:07-CR-286** |
| v. : | |
| : | **(Chief Judge Kane)** |
| **GREGORY J. SALKO,** : | |
|     Defendant : | |

## ORDER

**AND NOW**, on this 13th day of June, 2008, for the reasons set forth in the accompanying memorandum opinion, **IT IS HEREBY ORDERED THAT** Defendant's motion for intradistrict transfer (Doc. No. 32) is **GRANTED**. The Clerk of Court shall reassign the above-captioned case to the Scranton division.

 s/ Yvette Kane
Yvette Kane, Chief Judge
United States District Court
Middle District of Pennsylvania