**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

NO. 1:07-CR-0286

v.

(JUDGE CAPUTO)

GREGORY J. SALKO,

Defendant.

**MEMORANDUM**

Presently before the Court are a number of motions filed by the Government and Defendant Gregory J. Salko.  They are: (1) a motion to dismiss the indictment pursuant to Federal Rule of Criminal Procedure 12(b) by Defendant Salko (Doc. 39); (2) a motion for bill of particulars by Defendant Salko (Doc. 18); (3) a motion for discovery and inspection of physical evidence by Defendant Salko (Doc. 20); (4) a motion to compel the prosecution of evidence pursuant to Federal Rule of Evidence 404(b) and *Brady v. Maryland*, 373 U.S. 83 (1963) by Defendant Salko (Doc. 71); and (5) a motion for leave to take videotaped deposition in lieu of live testimony by the United States (Doc. 75).

For the reasons stated below, the Court will deny Defendant's motion to dismiss the indictment, but will bifurcate the trial so as to separate the sentencing portion of the trial from the case-in-chief.  Second, the Government will be ordered to file a bill of particulars as to which bills were false, with the dates and amounts of the reimbursement. The motion will be denied on all other grounds.  Third, the Court will order an *in camera* review of certain grand jury transcripts and/or witness statements for *Brady* statements. Fourth, the Court will deny Defendant's motion for Rule 16(a)(1) statements, and for

inspection of Peggy Rogers' clothing.  Fifth, the Court will order the Government to

produce the names of the patients it plans to use for Rule 404(b) purposes.  Sixth, the

Court will deny the Defendant's motion for Dr. Kass' grand jury transcript, as it is not

authorized by the Federal Rules of Criminal Procedure.  Finally, the Court will deny the

Government's motion for a videotaped deposition in lieu of live testimony, as the

Government has failed to meet its burden in demonstrating the witness' unavailability.

## BACKGROUND

On July 18, 2007, a grand jury charged Defendant Gregory Salko with two (2)

counts of health care fraud in violation of 18 U.S.C. § 1347[1] and seventeen (17) counts of

making false statements relating to health care in violation of 18 U.S.C. § 1035.[2]  (Doc.

---

[1]Section 1347 provides as follows:

> Whoever  knowingly  and  willfully  executes,  or  attempts  to
> execute, a scheme or artifice--
> > (1) to defraud any health care benefit program; or
> > (2) to obtain, by means of false or fraudulent pretenses,
> > representations,  or  promises,  any  of  the  money  or
> > property owned by, or under the custody or control of,
> > any health care benefit program,
> in connection with the delivery of or payment for health care
> benefits, items, or services, shall be fined under this title or
> imprisoned not more than 10 years, or both.  If the violation
> results in serious bodily injury (as defined in section 1365 of
> this  title),  such  person  shall  be  fined  under  this  title  or
> imprisoned not more than 20 years, or both; and if the violation
> results in death, such person shall be fined under this title, or
> imprisoned for any term of years or for life, or both.

18 U.S.C. § 1347.

[2]Section 1035 provides in relevant part:

2

1.)  The indictment charged that Defendant Salko, a licensed Pennsylvania physician, defrauded Medicare by billing medical services for two (2) of his patients, Peggy Rogers and Patient X, that he allegedly never performed.  (*Id.* at 4, 11.)  Both Rogers and Patient X suffered from breast cancer.  (*Id.* at 3, 10.)  Ms. Rogers ultimately died from metastatic breast cancer.  (*Id.* at 4.)

The indictment charged that Defendant Salko "caused employees . . . to electronically submit claims to Medicare representing that [he] had provided medical services to Rogers on [nine] separate occasions [but that he] did not render the medical services he claimed to have provided."  (*Id.* at 4-5.)  Based on these electronically submitted claims, Salko received compensation from Medicare.  (*Id.*)

The indictment further charged that "[i]n order to conceal his scheme from discovery via an audit, [Salko] caused employees . . . to prepare false Progress Notes that falsely represented that [he] had performed detailed physical examinations of Rogers," and that he caused "hard copies [of the Progress Notes] to be placed in Rogers' medical chart" and "electronic versions . . . to be retained in the computer files."  (*Id.* at

---

(a) Whoever, in any matter involving a health care benefit program, knowingly and willfully—

    (1) falsifies, conceals, or covers up by any trick, scheme, or device a material fact; or

    (2) makes any materially false, fictitious, or fraudulent statements or representations, or makes or uses any materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry,

in connection with the delivery of or payment for health care benefits, items, or services, shall be fined under this title or imprisoned not more than 5 years, or both.

18 U.S.C. § 1035(a).

5.)  Similarly, the indictment charges Salko with submitting eight (8) claims to Medicare and creating eight (8) Progress Notes in connection with Patient X.  (*Id.*)

On August 1, 2007, Salko pleaded not guilty to the indictment (Doc.  11), and was released on personal recognizance (Doc. 13).

The aforementioned motions are fully briefed and ripe for disposition.


**DISCUSSION**

**I.      Motion to Dismiss the Indictment (Doc. 39)**

Defendant Salko's first motion is a motion to dismiss the indictment.  (Doc. 39.)  In this motion, Defendant Salko argues that each of the counts in the indictment fail to state an offense because the indictment does not establish that he made any misrepresentations to Medicare or in the alternative that, if he had, the misrepresentations were not material.  Salko also argues that Counts I and XI, the health care fraud counts, do not include a material element of 18 U.S.C. § 1347, namely that the offense is "in connection with the delivery of or payment for health care benefits, items, or services."  Salko next  argues that the counts are duplicitous.  Finally, Salko argues that the indictment's allegations concerning Rogers's death and Patient X's injuries should be stricken because it does not explain how any fraud "resulted in serious bodily injury or death."

Under Federal Rule of Criminal Procedure 12(b), a defendant may file a pretrial motion "alleging a defect in the indictment or information."  FED. R. CRIM. P. 12(b)(3)(B). Generally, an indictment is "deemed sufficient if it: (1) contains the elements of the offense intended to be charged, (2) sufficiently apprises the defendant of what he must

4

be prepared to meet, and (3) allows the defendant to show with accuracy to what extent

he may plead a former acquittal or conviction in the event of a subsequent prosecution."

*United States v. Vitillo*, 490 F.3d 314, 321 (3d Cir. 2007) (quoting *United States v.*

*Rankin*, 870 F.2d 109, 112 (3d Cir. 1989)).

A.    Health Care Fraud (Counts I and XI)

Salko argues that Counts I and XI of the indictment must be dismissed because

they do not contain critical elements of the 18 U.S.C. § 1347 offense charged, that they

are duplicitous because they charge multiple offenses within a single count, and that the

indictment's allegations are insufficient to merit consideration on whether his conduct

"resulted in" the death of Rogers or the injuries to Patient X.

1.    Misrepresentation and Materiality

Defendant Salko's first argument is that the indictment does not allege that Salko

made affirmative misrepresentations to Medicare or Highmark Insurance.  Salko

contends that the indictment is internally inconsistent because it suggests at points that

he "in fact conducted physical examinations of Ms. Rogers and in fact consulted with

[Patient X] in her facility's lunchroom."  (Def.'s Br. in Supp., Doc. 40, at 3) (citing

Indictment, Doc. 1, at 3, 10).  According to Salko, such inconsistencies are fatal to the

indictment because "[t]he health care fraud statute . . . does not purport to criminalize

instances of alleged medical malpractice and therefore has no application to the

allegations of substandard medical care charged in the Indictment."  (Def.'s Br. in Supp.,

Doc. 40, at 3-4.)

Although the indictment includes allegations that Salko "spent little time with

Rogers and his physical examinations of her were often cursory and superficial"

5

(Indictment, Doc. 1, at 3), the indictment also plainly alleges that he "did not render the medical services *he claimed to have provided Rogers*." (Indictment, Doc. 1, at 5) (emphasis added).  The indictment charges that the differences between what Salko actually performed and what he claimed to have performed constitute the misrepresentations punishable by 18 U.S.C. § 1347.  Even if Salko had provided excellent care to Rogers and Patient X, if he made affirmative material misrepresentations to Medicare about the nature of his treatment, he would still be culpable under 18 U.S.C. § 1347.  Therefore, the Court finds that the indictment is adequate in that it charges Salko with making misrepresentations to Medicare and Highmark Insurance.

Salko next contends that any misrepresentations could not have been material "[b]ecause the allegedly false Progress Notes were never submitted to Medicare and payment was not conditioned on any data in the Progress Notes." (Def.'s Br. in Supp., Doc. 40, at 5.)  The Government  responds that although the Progress Notes may not have been submitted to Medicare, the electronic claims submitted by Salko constitute material misrepresentations because "Medicare determines what level of compensation to pay the physician by the particular code number identified in the claim." (Gov't Br. in Opp., Doc. 59, at 11.)  The Court agrees with the Government that the indictment charges Salko with making misrepresentations based upon the electronically submitted claims, and that such misrepresentations are material.  It is immaterial that the Progress Notes were never submitted to Medicare.  The Progress Notes merely act as evidence that the representations made on the electronically submitted claims were material misrepresentations.  Essentially, the Government alleges that the falsity occurs on the

electronic claims submissions, and they seek to prove the falsity through use of the

Progress Notes.

For the same reason, the Court finds Salko's arguments concerning the false

statements counts to be without merit because the claims can constitute "materially false,

fictitious, or fraudulent statements or representations."

2.      "In connection with"

Salko next argues that Counts I and XI of the indictment are defective because

they fail to specifically allege that Salko executed a scheme "in connection with the

delivery of or payment for health care benefits, items, or services."  18 U.S.C. § 1347.

Salko asserts that the Government "fails to point to any specific language in the

Indictment that puts Dr. Salko on notice as to whether the fraud is alleged to have

occurred in connection with 'delivery' or 'payment' and fails to identify the 'benefits, items,

or services' that form the basis for the charges."  (Def.'s Reply Br., Doc. 66, at 12.)[3]

The Government correctly counters that it need not include the precise statutory

language in the indictment.  It is settled that "[an] indictment is not insufficient merely

because it fails to recite the precise language of the statute."  *United States v. Dashney*,

117 F.3d 1197, 1205 (10th Cir. 1997).  Rather, the Federal Rules of Criminal Procedure

require that an indictment be "a plain, concise, and definite written statement of the

essential facts constituting the offense charged," FED. R. CRIM. P. 7(c)(1), and contain the

---

[3]      Salko cited *United States v. Bobo*, 344 F.3d 1076 (11th Cir. 2003) for the
proposition that an indictment should be dismissed if it does not identify a
connection between a fraudulent scheme and the "delivery of or payment
for health care benefits, items, or services."  *Bobo* is readily
distinguishable, and in any event, the Court finds that the indictment
alleges specific facts sufficient to establish a connection.

elements of the offense charged.  *Vitillo*, 490 F.3d at 321.  The indictment alleges that

Salko received "compensation from Medicare [he was] not entitled to receive," after he

submitted, and Highmark approved, his false claims.  (Indictment, Doc. 1, at 5.)  In

describing the scheme to defraud, the indictment alleges that Salko billed Medicare "for

medical services rendered . . . that [he] did not, in fact, provide [and] obtained monies

from Medicare [he was] not entitled to receive."  (*Id.* at 4.)  Although the indictment does

not recite the specific statutory language that Salko executed a scheme "in connection

with the delivery of or payment for health care," the indictment is sufficient in describing

the acts, and therefore states an offense under 18 U.S.C. § 1347.

### 3.    Duplicity

Salko next argues that Counts I and XI must be dismissed because they are

duplicitous.  As the Third Circuit Court of Appeals has explained, "[d]uplicity is the

improper joining of distinct and separate offenses in a single count [which] may conceal

the specific charges, prevent the jury from deciding guilt or innocence with respect to a

particular offense, exploit the risk of prejudicial evidentiary hearings, or endanger fair

sentencing."  *United States v. Haddy*, 134 F.3d 542, 548 (3d Cir. 1998).  Salko argues

that "[t]he indictment is flawed in that it fails to specify which of the 16 transactions will be

used to at trial to establish execution of the alleged fraudulent scheme."  (Def.'s Br. in

Supp., Doc. 40, at 6.)

Although the Third Circuit Court of Appeals has not considered a duplicity

challenge in a health-care fraud case, other circuit courts have considered and rejected

similar arguments.  *See, e.g., United States v. Davis*, 471 F.3d 783, 790 (7th Cir. 2006)

("The indictment sets out an ongoing and continuous course of conduct, accomplished

8

through three different methods, that were repeated on numerous (likely daily) occasions over several years.  The indictment alleges only one crime: health care fraud.  [T]he crime charged here was fairly straightforward, involved only one defendant, one victim, and one criminal statute."); *see also United States v. Hickman*, 331 F.3d 439, 445-46 (5th Cir. 2003) ("We hold . . . that the health care fraud statute, § 1347, punishes executions or attempted executions of schemes to defraud, and not simply acts in furtherance of the scheme.  Of course, although the crime of health care fraud is complete upon the execution of a scheme, any scheme can be executed a number of times, and each execution *may be* charged as a separate count.").

In bank-fraud cases, which are analogous to health-care-fraud cases, the circuits generally agree "that each execution of a scheme to defraud need not give rise to a [separate] charge in the indictment."  *United States v. King*, 200 F.3d 1207, 1213 (9th Cir. 1999) (following *United States v. Hammen*, 977 F.2d 379 (7th Cir. 1992) and *United States v. Bruce*, 89 F.3d 886 (D.C. Cir. 1996)).  The Third Circuit Court of Appeals has approved of this approach in a recent unpublished opinion.  *See United States v. Clark*, 208 Fed. App'x 137, 141 (3d Cir. 2006) ("To prove commission of the offense, the Government needed only to show that Clark executed or attempted to execute the scheme once.  Under these circumstances, our sister circuits have held that it is appropriate for the Government to charge but one count of bank fraud, alleging that the defendant took part in a fraudulent scheme that was executed at least once.").

In line with the circuits that have considered the issue, the Government may — but need not — charge a single count of health-care fraud charging a defendant with executing a scheme based upon multiple executions.  Here, the Government has chosen

to do so, and therefore indictment should not be dismissed on these grounds.

B.      *"Results in serious bodily injury or death"*

1.      Element versus Sentencing Enhancement

Defendant Salko first argues that the "results in serious bodily injury" language in 18 U.S.C. § 1347 constitutes a sentencing enhancement rather than an element.  To that extent, Defendant Salko requests that the case be bifurcated between the case-in-chief and sentencing enhancement.  In opposition, the Government argues that this language is an element to be proven in the case-in-chief.

Dicta from Justice Kennedy's dissent in  the United States Supreme Court case of *Jones v. United States*, 526 U.S. 227 (1999) supports the proposition that the "results in serious bodily injury or death" language of Section 1347 is a sentencing enhancement, rather than an element of the crime.  In the dissent, Justice Kennedy  noted that "Congress does not always separate sentencing factors into separate subsections."  *Id.* at 258.  In support of that proposition, Justice Kennedy cites 18 U.S.C. § 1347, stating that the health care fraud statute includes "enhanced penalties if the violation 'results in serious bodily injury' or 'results in death.'" *Id.* (quoting 18 U.S.C. § 1347).

In this case, the rationale of Justice Kennedy's dissent is persuasive based on the distinguishing factors between Section 1347 and 18 U.S.C. § 2119, which was at issue in *Jones.*  In the *Jones* majority, the Court found that 18 U.S.C. § 2119 set forth three elements, rather than a sentencing factor.  The statute considered was a carjacking statute, which at the time read

> Whoever, possessing a firearm as defined in section 921 of
> this title, takes a motor vehicle that has been transported,
> shipped, or received in interstate or foreign commerce from

the person or presence of another by force and violence or by intimidation, or attempts to do so shall -

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned any number of years up to life, or both.

*Id.* at 230 (quoting 18 U.S.C. § 2119).

At the District Court and Court of Appeals levels, the courts found that the numbered sections were not an element of the independent offense, and found that the subsections provided sentencing factors.  *Id.* at 231-32.  In considering whether the numbered subsections were sentencing factors or elements, the Supreme Court noted that at first glance, the subsections appeared to be sentencing factors. *Id.* However, the Court stated that in considering the subsections, not only did the subsections provide for higher penalties, but "condition[ed] them on further facts (injury, death) that seem quite as important as the elements in the principal paragraph."  *Id.*  Therefore, "[i]t is at best questionable whether the specification of facts sufficient to increase a penalty by two-thirds, let alone from 15 years to life, was meant to carry none of the procedural safeguards that elements of an offense bring with them for a defendant's benefit."  *Id.* The Court took into consideration that elements are required to be charged in the indictment, submitted to a jury, and proven by the Government by a reasonable doubt. *Id.* at 232.

The distinguishing factor between Sections 1347 and 2119 is the ability of the

statute to stand on its own.  In the case of Section 2119, the Supreme Court noted that

the first paragraph cannot stand alone.  *Id.* at 233-34.  The subsections are required to

complete the thought of the first paragraph.  *Id.*  This is not the case in Section 1347.

Rather, the language regarding "results in serious bodily injury or death" is in a separate

sentence.  This too implies that the language is a sentencing enhancement, rather than

an element of the crime.

Although "results in serious bodily injury or death" acts as a sentencing

enhancement rather than an element, this does not mean that the issue does not go

before a jury.  As per *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) the Supreme

Court held that "[o]ther than the fact of a prior conviction, any fact that increases the

penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury

and proved beyond a reasonable doubt."  In this case, the factor of whether the health

care fraud "result[ed]" in serious bodily injury or death is a fact to be determined by the

jury.

The Third Circuit Model Criminal Jury Instructions are also instructive on this issue.

The Model Jury Instructions, "Health Care Fraud - Elements of the Offense" are as

follows:

> Count (number) of the indictment charges the
> defendant (name) with health care fraud, which is a violation
> of federal law.
>
> In order to find the defendant guilty of this offense, you
> must find that the government proved each of the following
> three elements beyond a reasonable doubt:  First: That
> (name) knowingly devised or participated in a scheme to
> (defraud (victim entity or person)) (obtain, by means of false or
> fraudulent pretenses, representations, or promises, any of the
> money or property owned by, or under the custody or control

of (victim entity or person)) in connection with the delivery of or payment for health care benefits, items, or services;

Second: That (name) acted with the intent to defraud; and

Third: That (victim entity or person) was

[a (public)(private) plan or contract, affecting commerce, under which medical benefits, items, or services were provided to any individual.]

[an (individual)(entity) who was providing a medical benefit, item, or service for which payment may be made under a (public)(private) plan or contract, affecting commerce, under which medical benefits, items, or services were provided to any individual].

Third Circuit Criminal Model Jury Instructions §6.18.1347 (2007).  The Model Jury Instructions list only three (3) elements, none of which include the "results in serious bodily injury or death" element.  There is no "option" to include this as an element if applicable.  Therefore, it appears that the intent of the Committee on Model Jury Instructions for the Third Circuit is to treat "results in serious bodily injury or death" as a sentencing enhancement.

Defendant Salko requests that the trial be bifurcated so as to introduce evidence of the sentencing enhancement to the jury only in the sentencing portion of the trial, and not during the case-in-chief.  The Court agrees with Defendant Salko that evidence of the sentencing enhancement during the case-in-chief would be prejudicial to the Defendant. Therefore, the Court will bifurcate the trial so that evidence of the sentencing enhancement is separate from the case-in-chief.

2.      Sufficiency  of the Sentencing Enhancement Allegation

Defendant Salko next argues that the allegations pertaining to Rogers' death and

13

Patient X's injuries should be stricken because the indictment fails to adequately explain how any alleged misrepresentations "result[ed] in serious bodily injury or death," as set forth in 18 U.S.C. § 1347.

Section 1347 provides for enhanced penalties "[i]f the violation results in serious bodily injury [or] if the violation results in death."  18 U.S.C. § 1347.  Salko argues that the alleged violation  - the overbilling -  did not result in any serious bodily injury or death. Defendant argues that as charged in the indictment, the only victims of Salko's alleged fraud were taxpayers, not Rogers or Patient X.

In support of this argument, Defendant Salko cites *United States v. Mermelstein*, 487 F. Supp. 2d 242 (E.D.N.Y. 2007), which appears to be the only substantive judicial treatment of the "results in" language found in Section 1347.  In *Mermelstein*, the District Court for the Eastern District of New York adopted the Magistrate Judge's Report and Recommendation regarding whether the government would be permitted to prove if two (2) patients sustained serious bodily injuries when the defendant, an opthamologist, "falsely stated in his medical records that he was measuring and monitoring [the patients'] eye pressures when in fact he was not, [and] they suffered a worsening of their glaucoma and sustained a permanent loss of vision."  *Id.* at 259.  The district court found that the indictment was insufficient finding that:

> Even assuming that [the patients] would not have suffered these consequences had their eye pressures been monitored regularly and properly, the government has failed to indicate how the false entries in Mermelstein's records "result[ed] in" the injuries [the patients] sustained, as Section 1347 requires. The government has not, for example, proffered any evidence indicating that [the patients] relied upon Mermelstein's representations to insurers that their eye pressures were being monitored, or even that [the patients] knew of those

14

> representations.  Although Section 1347 does not define the
> degree of connection between a scheme to defraud and a
> resulting injury sufficient to trigger an enhanced penalty, the
> plain meaning of the statutory language "results in serious
> bodily injury" requires more direct causation than the
> government's proffer establishes.

*Id.*  In opposition, the Government argues that *Mermelstein* is distinguishable from this case, because "[h]ere, there are direct allegations of inadequate medical care *plus* a clear causal connection between the sub-standard care Rogers and Patient X received and the serious injuries they sustained."  (Gov't Br. in Opp., Doc. 59, at 31.)  The Government indicates that it intends to call expert witnesses who will testify that had Salko performed the physical exams he claimed to have performed, he would have readily discovered Rogers' and Patient X's breast cancer.

 *Mermelstein* is easily distinguished from the case at bar.  In *Mermelstein*, the Magistrate Judge noted that the government failed to properly indicate how the false records "resulted" in serious bodily injury.  *Mermelstein*, 487 F. Supp. 2d at 259.  In finding that the government had not properly indicated the "results in" language, the court noted that there was no evidence of reliance by the patients on misrepresentations regarding their eye pressures.  *Id.*  However, Section 1347 does not require reliance by the patients.  Rather, the statute provides that the reliance occurs in the defrauding, or obtaining money by fraudulent representations, of the *health care benefit program.*  Although *Mermelstein* references reliance by the patient, it is not called for under Section 1347.

 The Court finds that the indictment in this case is sufficient to permit the Government to attempt to prove that Salko's alleged fraudulent billing scheme resulted in

serious bodily injury and/or death for purposes of a sentencing enhancement.  Fraudulent billing practices can take many forms.  For example, fraudulent billing practices can involve: billing for services not provided; misrepresenting the level of service actually provided (commonly referred to as "upcoding"); bundling and unbundling procedures to avoid reimbursement restrictions; retaining overpayments; providing unnecessary services; and failing to provide adequate or necessary services.  ROBERT FABRIKANT ET AL., HEALTH CARE FRAUD: CRIMINAL, CIVIL, AND ADMINISTRATIVE LAW § 2.02 (2007).  In many circumstances, it may be difficult to conceive of some fraudulent billing practices, such as retaining overpayments, "result[ing] in serious bodily injury."  But this is not such a case.

The indictment charges Salko with devising and executing a scheme to defraud Medicare by billing for services not provided.  It is the Government's theory that the consequence, or result, of Salko's nonfeasance was Rogers' death and the progression of Patient X's cancer.  The Government does not allege that Salko caused either Rogers or Patient X to develop cancer; rather, it alleges that the Salko's fraudulent scheme allowed the patients' preexisting conditions to worsen, "result[ing] in" Rogers' death and Patient X's serious bodily injury. Under this theory, Salko decided not to treat Rogers and Patient X but to claim that he had, and the effects of that decision were reimbursement for services not rendered *and* serious bodily injuries to his patients.

At this stage, such pleading  is sufficient to permit the Government to present evidence that could support a finding that Salko's scheme resulted in the death of Rogers and serious bodily injury of Patient X, and therefore Salko's motion to dismiss the indictment will be denied on these grounds.

## II.      Motion for Bill of Particulars  (Doc. 18)

The second motion before the Court is Defendant Salko's motion for a bill of particulars pursuant to Federal Rule of Criminal Procedure 7(f). (Doc. 18.)   Rule 7(f) provides, in relevant part, that "[t]he court may direct the government to file a bill of particulars.  The defendant may move for a bill of particulars before or within 10 days after arraignment or at a later time if the court permits."  FED. R. CRIM. P. 7(f). The Third Circuit Court of Appeals has explained that "[t]he purpose of a bill of particulars is 'to inform the defendant of the nature of the charges brought against him, to adequately prepare his defense, to avoid surprise during the trial and to protect him against a second prosecution for an inadequately described offense.'"  *United States v. Urban*, 404 F.3d 754, 771 (3d Cir. 2005) (quoting *United States v. Addonizio*, 451 F.2d 49, 63-64 (3d Cir. 1972)).

The Federal Rules of Criminal Procedure have been amended  to "encourage a more liberal attitude by the courts toward bills of particulars." *United States v. Rosa*, 891 F.2d 1063, 1066 (3d Cir. 1989) (quoting FED. R. CRIM. P. advisory cmte. notes to 1966 amendments).  When deciding whether to direct the government to file a bill of particulars the Court must assess whether the indictment fails "to provide factual or legal information," and whether that failure "significantly impairs the defendant's ability to prepare his defense or is likely to lead to prejudicial surprise at trial." *Id.* at 1066.  In its decision, the Court enjoys:

> broad discretion . . .  to strike a prudent balance between the
> defendant's legitimate interest in securing information
> concerning the government's case and numerous
> countervailing considerations ranging from the personal
> security of witnesses to the unfairness that can result from

17

> forcing the government to commit itself to a specific version of
> the facts before it is in a position to do so.

*Id.*  The Third Circuit Court of Appeals has held that the need for a bill of particulars is

obviated in cases where the Government supplements a detailed charging document with

substantial discovery.  *Urban*, 404 F.3d at 772 (citing *United States v. Giese*, 597 F.2d

1170, 1180 (9th Cir. 1979)).  A bill of particulars is "not intended to provide the defendant

with the fruits of the government investigation. . . .  Rather, [it is] intended to give the

defendant only that minimum amount of information necessary to permit the defendant to

conduct his own investigation." *United States v. Smith*, 776 F.2d 1104, 1111 (3d Cir.

1985) (citations omitted).

Defendant Salko argues that a bill of particulars is necessary because the

indictment is "fraught with generalities" and is "so lacking in detail that [he] cannot

reasonably be expected to know the specific charges against him" (Def.'s Br. in Supp.,

Doc. 19, at 4), and identifies twenty-two (22) deficiencies in the indictment.

Salko contends that the indictment fails to adequately inform him as to which

persons or entities received or relied on his Progress Notes, and how these Progress

Notes were relied upon.  Furthermore, Salko requests that the Court order the

Government to clarify the manner by which the Progress Notes were material to or relied

upon by Medicare or its agent, Highmark Insurance, to pay reimbursements to Salko.

(Doc. 18 ¶¶ 1-3, 12-14.)  Additionally, Defendant also requests what false and fraudulent

pretenses the Government alleges in Count One, and incorporated in Counts Two

through Ten.  Salko states that the indictment does not indicate the dates the

compensation was received, the amount of compensation received, or any other benefit

received by Defendant Salko.  (*Id.* ¶¶ 4-5, 15-16.)  Next, Salko complains that the

indictment does not identify what Salko concealed from Medicare or Highmark, or the

manner by which he concealed it. (*Id.* ¶¶ 6-7, 17-18.) Furthermore, Salko seeks a

description of all overt acts that the Government will rely upon at trial, including acts of

concealment, intent, knowledge, and reckless disregard for bodily injury and death.  (*Id.*

¶¶ 8, 19.)  Finally, Salko argues that the indictment does not adequately explain how any

fraud or the Progress Notes "resulted in" Rogers' death or injury to Patient X.  Salko also

asserts that the indictment fails to detail the direct causal connection between the fraud

and the injuries to Peggy Rogers and Patient X.  (*Id.* ¶¶ 9-11, 20-22.)

     Many of Defendant Salko's arguments rely on the fact that the Progress Notes

were never submitted to Medicare.  From this fact, Defendant asserts that these Progress

Notes could not have induced reimbursement or been a material misrepresentation.  On

this basis, Defendant Salko requests that the Government supplement the indictment to

more clearly inform the Defendant as to the charges against him.

     The Government agrees that Salko is "entitled to learn the precise nature of the

falsehoods he allegedly submitted to Medicare and their materiality." (Gov't Br. in Opp.,

Doc. 46, at 8.)  But, the Government counters that a bill of particulars is unnecessary

because the indictment already provides such information.  The Government notes that

the indictment explicitly charges that Salko submitted fraudulent electronic claims for

reimbursement, and that he created falsified Progress Notes in order to conceal the fraud

contained in the electronic claims.  A review of the indictment reveals that it plainly

alleges that, on sixteen (16) separate occasions, Salko caused electronic claims to be

submitted to Medicare for services that he did not render, and further identifies the dates

19

on which Salko caused those claims to be filed.  (Indictment, Doc. 1.)  The indictment

further distinguishes between the allegedly fraudulent submission of claims and the use

of Progress Notes to conceal the fraud.  Therefore, the Court will deny Defendant's

motion for a bill of particulars with respect to the nature and manner of the alleged fraud

and concealment.

Salko's next argument asserts  that the indictment does not provide "the dates Dr.

Salko received the alleged fraudulent compensation, the amount of alleged fraudulent

compensation received, nor any other specific benefit obtained by Dr. Salko."  (Def.'s Br.

in Supp., Doc. 19, at 6.)  The Government responds the indictment need not "articulate

the precise amount of money Salko received" because the amount is not legally relevant.

The purpose of a bill of particulars is not to test the sufficiency of the indictment, but to

provide sufficient factual information for a defendant to adequately prepare a defense.

*Urban*, 404 F.3d at  771.  Although the amount of money received by Salko or the date of

receipt may not be legally relevant, the operative question is whether the failure to

provide such information would significantly impair Salko's ability to prepare his defense.

*Id.*  Salko argues that "[w]ithout a bill of particulars, Dr. Salko is forced to rely solely on

conjecture as to what compensation or money he obtained from Highmark Insurance."

(Def.'s Br. in Supp., Doc. 19, at 6.)  There are no representations that the Government

has provided Salko with this information through discovery.  Nor does it appear that Salko

is attempting to improperly obtain the fruits of a Government investigation by seeking this

information.  No countervailing interests weigh against a bill of particulars on this issue.

Therefore, the Court will order the Government to file a bill of particulars as to which bills

were false, with the dates and amounts of the reimbursement.

20

Salko further asserts that the indictment is "silent . . . as to what fraud caused the serious bodily injury and how the fraud caused the injury" and does not "establish how [the] false entries 'resulted in' the injuries Peggy Rogers and 'Patient X' sustained." (Def.'s Br. in Supp., Doc. 19, at 6-7.)  The Government counters that the indictment "alleges it was part of [Salko's] scheme to defraud to deny Rogers and Patient X adequate medical care."  (Gov't Br. in Opp., Doc. 46, at 11.)  To support its argument, the Government refers to charges in the indictment that Salko spent "little time with Rogers and his physical examinations of her were often cursory and superficial" (Indictment, Doc. 1, at 3), and that he "did not physically exam[ine] [Patient X]." (*Id*. at 10.)  The indictment also alleges that both Rogers and Patient X suffered from breast cancer, and states that had Salko performed the medical services claimed "he would have surely discovered the [cancer] in [Rogers'] breast."  (*Id.* at 6.)

Although the indictment does not describe the causal nexus between Salko's fraud and the injury as explicitly as it might have, its charges that Salko's alleged nonfeasance led to Rogers's death and the exacerbation of Patient X's injuries.  Such an allegation is enough to prevent any risk of prejudice or surprise at trial as to the causal nexus between the fraud and the injury for purposes of the sentencing enhancement.  Therefore, the Court will deny Salko's motion for a bill of particulars with respect to the causal nexus between the fraud and patients' injuries.

### III.    Discovery Motions (Docs. 20, 71)

Several discovery motions are pending before the Court.  First, Defendant filed a motion for discovery and inspection of physical evidence.  (Doc. 20.)  Defendant also filed a motion to compel evidence as mandated by Federal Rule of Evidence 404(b) and

*Brady v. Maryland*, 373 U.S. 83 (1963).  (Doc. 71.)

In his first discovery motion, Defendant Salko  requests that the Government produce any exculpatory evidence it has in its possession pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny.  This motion was renewed by the Defendant on April 4, 2008.  (Doc. 71.)  Second, Salko requests that the Government produce any statements covered under Federal Rule of Criminal Procedure 16(a)(1).  Third, Salko requests that the Government produce Rogers's clothing as required under Federal Rule of Criminal Procedure 16(a)(1)(E).  Fourth, Salko requests that the Government identify any evidence of crimes, wrongs, or acts that it intends to introduce at trial as required under Federal Rule of Evidence 404(b).  This request was also renewed by the Defendant on April 4, 2008.  (Doc. 71.)  Finally, Salko requests that the Government produce transcripts of the grand jury testimony of Dr. Rena Kass, an expert witness.

1.    *Brady v. Maryland*

Defendant Salko's first discovery related motion requests all *Brady v. Maryland*, 373 U.S. 83 (1963) material.  *Brady* holds that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilty or punishment, irrespective of good faith or bad faith of the prosecution."  *Id.* at 87.  In its response, the Government stated that it "is not currently aware of evidence falling within the parameters of the Supreme Court's directive in *Brady v. Maryland* . . . [and] is aware of its on-going duty to bring such evidence to the attention of defense counsel."  (Gov't Br. in Opp., Doc. 47 at 5.)

Defendant Salko renewed his motion for to compel *Brady* material, alleging that the prosecution is in possession of evidence that tends to show the innocence of the

Defendant.  (Doc. 71.)  Specifically, Defendant Salko listed the testimony by Danette McGirr, Loriann Manfre-Conahan and other employees of Whites Crossing Medical Group, Inc. as offering evidence of a computer template error in the template for the Progress Notes of Peggy Rogers.  Defendant argues that this evidence is exculpatory and tends to show that the inaccurate Progress Notes were a mistake.  Defendant asserts that the Government's failure to disclose this information is a violation of *Brady*. The Defendant states that the Government is in possession of statements and grand jury testimony from witnesses who explained that the Progress Notes were created in error, which would tend to show the innocence of the Defendant.  The Government asserts that no *Brady* evidence is included in the grand jury testimony of these witnesses.  The Government further argues that the particular witnesses have given testimony before the grand jury, subjecting the testimony to the Rule 6(e) secrecy provisions.

To establish a *Brady* violation, it must be shown that (1) evidence was suppressed; (2) the evidence was favorable to the Defendant; and (3) the evidence was material to guilt or punishment.  *United States v. Risha*, 445 F.3d 298, 303 (3d Cir. 2006) (citing *United States v. Pelullo*, 399 F.3d 197, 209 (3d Cir.2005)). This is an objective test, and no bad-faith inquiry is required.  *Id.* (citing *United States v. Merlino*, 349 F.3d 144, 154 (3d Cir.2003)).  At this time, it is difficult to determine if favorable evidence is suppressed, and whether the evidence is favorable to guilt or punishment.  It has suggested that the Government provide copies of the grand jury transcripts and/or witness statements for *in camera* review by the Court.  Without the statements, it is difficult to determine whether a *Brady* violation has occurred.  Therefore, an *in camera* review is warranted, and the Court will order the Government to produce the grand jury transcripts and/or witness statements

23

for *in camera* review.

>   2.    Rule 16(a)(1) Statements

Second, Defendant Salko requests any statements covered by Rule 16(a)(1). Such statements would include Defendant's own oral or written statements.  FED. R. CRIM. P. 16(a)(1).  The Government states that it has previously advised Salko that it has no written statement or written report of an oral statement.

The Government contends that the only other statement falling within the ambit of Rule 16(a)(1)(A) or (B) in the Government's custody is an audio copy of a voice mail left by Defendant Salko on a Lackawanna County Area Agency on Aging telephone answering machine on August 23, 2006.  (Gov't Br. in Opp., Doc. 47 at 1.)  The Government asserts that the Defendant was provided with a copy of this message on November 30, 2007 by the Lackawanna County District Attorney's Office, and by the Government on December 13, 2007.  (*Id.* at 2.)  As to any written entries, the Government states that all such documents that the Government intends to offer as exhibits were copied and provided by cover letter dated September 14, 2007.

The Government also stated that to the extent such "statements" may exist in other documents, the Government invites Defendant to its Harrisburg office to inspect, review and copy any document in the Government's possession, other than privileged documents, witness statements, reports of witness statements, and grand jury testimony. Therefore, it appears that the Government has complied with the requirements of Rule 16(a)(1).

Defendant Salko also requests all agency and adoptive declarations.  Defendant cites to *United States v. Bainbridge Mgmt., Inc.*, No. 01 CR 496-1, 01-CR 469-6, 2002

WL 538777 (N.D. Ill. Apr. 11, 2002) for the proposition that any agency or adoptive

statements should be produced to Defendant Salko, who is an individual defendant.

However, there is no authority in the Federal Rules of Criminal Procedure to grant access

to adoptive or agency statements to an individual defendant.  Specifically, Federal Rule

of Criminal Procedure 16(a)(1)(C) states that "[u]pon a defendant's request, *if the*

*defendant is an organization*, the government must disclose to the defendant any

statement . . . [which ](i) was legally able to bind the defendant . . because of that

person's position as the defendant's . . . agent; or (ii) was personally involved in the

alleged conduct . . and was able to legally bind the defendant regarding that conduct

because of that person's position as the defendant's . . . agent."  FED. R. CRIM. P.

16(a)(1)(C) (emphasis added).   In *Bainbridge*, the defendant was an organization, which

comports with Rule 16(a)(1)(C).  There is no authority to give agency statements to

Defendant Salko, as he is not an organization.  Therefore, the Court will not order the

Government to produce any adoptive statements.

3.    Rogers' Clothing

Third, Defendant requests that the Government produce the clothing of Peggy

Rogers as required under Federal Rule of Criminal Procedure 16(a)(1)(E).  However, the

Government states in its brief that the government does not have custody or control of

the requested articles of clothing, and that the items are currently in the custody of the

Lackawanna County District Attorney's Office.  Pursuant to Rule 16(a)(1)(E), the

Government need only permit inspection "if the item is within the government's

possession, custody, or control."  FED. R. CRIM. P. 16(a)(1)(E).  Therefore, the Court will

deny Defendant's request the Government to produce Peggy Rogers' clothing.

25

4.      Federal Rule of Evidence 404(b)

Pursuant to Federal Rule of Criminal Procedure 16(a)(1)(D) and Federal Rule of Evidence 404(b), the Government must furnish a copy of the Defendant's criminal record, and must provide reasonable notice in advance of trial of any evidence of other crimes, wrongs, or bad acts it intends to introduce at trial.  Defendant Salko requested clarification on the Government's position regarding such evidence.

The Government asserted that to the best of its knowledge, Salko had no prior state or federal record of conviction for a misdemeanor or felony, and therefore has no record to furnish to the Defendant .  *See* FED. R. CRIM. P. 16(a)(1)(D).

Federal Rule of Evidence 404(b) provides that

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

FED. R. EVID. 404(b).  Salko first requested Rule 404(b) materials on November 15, 2007. (Doc. 20.)  The Government responded by stating that "[a]t this time the government has no plans to offer any other crimes, wrongs or acts evidence under Federal Rule of Evidence 404(b) during its case-in-chief.  However, the government reserves its right to offer evidence of other crimes or wrongs in the event the defense offers or suggests a defense, including but not limited to lack of intent or mistake, during trial." (Gov't Br. in Opp., Doc. 47 at 4.)

Defendant Salko re-raised the issue of the Rule 404(b) evidence in a second evidentiary motion.  (Doc. 71.)  Specifically, Defendant Salko argues that the Government has only stated that it has no plans to offer Rule 404(b) evidence in its case-in-chief. Defendant Salko argues that the rule requires all Rule 404(b) evidence to be provided with reasonable notice in advance of trial, not only evidence to be brought in the Government's case-in-chief.  In distinguishing the requirement of all evidence to be brought at trial to all evidence in a party's case-in-chief, Defendant Salk points to Rules 16(a)(1)(G) and (b)(1)(B)(ii), which specify that expert reports must be provided if they are to be offered in the "case-in-chief."  The Defendants notes that expert reports are subject to this case-in-chief limitation, but no such limiting language exists in Rule 404(b). Defendant also references the Advisory Committee Notes to the 1991 Amendments of Rule 404(b).  These notes state:

> The amendment requires the prosecution to provide notice, regardless of how it intends to use the extrinsic act evidence at trial, i.e., during its case-in-chief, for impeachment, or for possible rebuttal.  The court in its discretion may, under the facts, decide that the particular request or notice was not reasonable, either because of lack of timeliness or completeness.  Because the notice requirement serves as a condition precedent to admissibility of 404(b) evidence, the offered evidence is inadmissible if the court decides the notice requirement has not been met.

FED. R. EVID. 404(b) advisory cmte. notes to 1991 amendments.  Therefore, although the Government may not plan to introduce any Rule 404(b) testimony in its case-in-chief, it is still required to give notice of such evidence if it plans to introduce it on rebuttal or on impeachment.

In response, the Government submitted a description of the "general nature" of the

Rule 404(b) evidence that may be offered on rebuttal.  This description stated:

> The government will offer at trial documentary and testimonial evidence that the defendant submitted dozens of false claims, beyond those charged in the Indictment, to Medicare during 2005 and 2006.  These other claims were, like the charged claims, electronically submitted and supported by false progress notes.  Most if not all of these false claims were, like the charged offense, submitted to Medicare for claimed Evaluation and Management medical services allegedly performed by Dr. Salko at various nursing homes, assisted living facilities, hospitals, office visits, and home visitations. The government's proof will consist of, among other aspects, "Impossible Day" type testimony and evidence in which the government will show it was virtually impossible for Dr. Salko to have performed all of the medical services he claimed to have performed on a particular date.  The government will also offer other extrinsic proof that particular medical services were not, in fact, provided on the dates or in the manner represented by Salko to Medicare.

(Doc. 79, at 5.)  The Government asserts that this statement fulfills the Government's obligation under Rule 404(b).  Defendant Salko disagrees, and requests a more specific description of the Rule 404(b) evidence.

This statement is somewhat ambiguous as to the "general nature of any such evidence it intends to introduce at trial."  To satisfy the Rule 404(b) notice requirement, the Court will order that the Government produce the names of the patients which relate to the false claims allegedly submitted by Mr. Salko.

5.      Expert Testimony Grand Jury Testimony of Dr. Rena Kass

The last discovery dispute concerns  whether the Government must produce the grand jury transcripts of the testimony of Dr. Rena Kass, an expert witness.  The Government argues that it complied with its obligation under Federal Rule of Criminal Procedure 16(a)(1)(G) to provide a written summary of Dr. Kass' testimony and that

28

Defendant Salko has no legal entitlement to a transcript of her grand jury testimony.

Rule 16(a)(1)(G) provides that:

> At the defendant's request, the government must give to the
> defendant a written summary of any testimony that the
> government intends to use under Rules 702, 703, or 705 of
> the Federal Rules of Evidence during its case-in-chief at trial.
> If the government requests discovery under subdivision
> (b)(1)(C)(ii) and the defendant complies, the government
> must, at the defendant's request, give to the defendant a
> written summary of testimony that the government intends to
> use under Rules 702, 703, or 705 of the Federal Rules of
> Evidence as evidence at trial on the issue of the defendant's
> mental condition. The summary provided under this
> subparagraph must describe the witness's opinions, the bases
> and reasons for those opinions, and the witness's
> qualifications.

FED. R. CRIM. P. 16(a)(1)(G).  The Government argues that pursuant to this rule, the

government is obligated only to present the defendant with a written summary.

Additionally, the Government notes Dr. Kass' grand jury testimony is subject to the

Jencks Act, 18 U.S.C. § 3500, and therefore must be produced at the conclusion of direct

examination, but may not be ordered produced sooner.  *See* 18. U.S.C. § 3500(a) ("In

any criminal prosecution brought by the United States, no statement or report in the

possession of the United States which was made by a Government witness or

prospective Government witness (other than the defendant) shall be the subject of

subpena, discovery, or inspection until said witness has testified on direct examination in

the trial of the case.").  The Court notes, however, that the Government may voluntarily

produce such evidence sooner.  Furthermore, if such evidence is exculpatory, it is subject

to *Brady v. Maryland*, 373 U.S. 83 (1963).

Federal Rule of Criminal Procedure 6(e)(3)(E)(i) provides that "[t]he court may

authorize disclosure - at a time, in a manner, and subject to any other conditions that it directs - of a grand-jury matter . . . preliminarily to or in connection with a judicial proceeding." FED. R. CRIM. P. 6(e)(3)(E)(i).  Defendant's request for the grand jury transcript fails because his reliance on Federal Rule of Criminal Procedure 6(e)(3)(E)(i) is misplaced.  The court notes that "'it is settled that . . . exception [ (i) ] applies only to situations where the judicial proceeding for which disclosure of grand jury material is sought is a judicial proceeding different from the criminal trial authorized by the grand jury's indictment.'" *United States v. Bunty*, Criminal No. 07-641, 2008 WL 2371211, at *10 (E.D. Pa. June 10, 2008) (quoting *United States v. Nguyen*, 314 F. Supp. 2d 612, 615 (E.D.Va.2004) (citing *United States v. Procter & Gamble Co.*, 356 U.S. 677 (1958)). Here, Defendant Salko requests that the Court release the grand jury transcript for the same proceeding stemming from the grand jury's indictment.  Therefore, the exception of Rule 6(e)(3)(E)(j) is inapplicable.

Furthermore, even if Rule 6(e)(3)(E)(i) applied in such a case, Defendant Salko would not be entitled to the grand jury transcript of Dr. Kass.  "As a matter of public policy, grand jury proceedings generally must remain secret except where there is a compelling necessity." *United States v. McDowell*, 888 F.2d 285, 289 (3d Cir. 1989) (citing *United States v. Proctor & Gamble*, 356 U.S. 677, 682 (1957)).  Before the Court may authorize disclosure of grand jury testimony under this rule, Defendant Salko must show "a particularized need for that information which outweighs the public interest in secrecy." *McDowell*, 888 F.2d at 289 (citing *Proctor & Gamble Co.*, 356 U.S. at 682).  If Salko can show such a particularized need, then the Court must then "weigh the

competing interests and order so much disclosure as needed for the ends of justice." *Id.*

at 289 (quoting *In re Grand Jury Matter (Catania)*, 682 F.2d 61, 62 (3d Cir.1982)).  In

balancing the competing interests, the court "is infused with substantial discretion." *Id.*

(quoting *Douglas Oil Co. v. Petrol Stops Nw.*, 441 U.S. 211, 223 (1979)).

Defendant Salko argues that failure to disclose Dr. Kass' grand jury testimony

would "impede the preparation of cross-examination, restrict the opportunity to test the

merit of the expert's testimony, and increase the likelihood of the need for continuances."

(Def.'s Br. in Supp., Doc. 21, at 7.)  Additionally, Salko argues that pretrial disclosure of

Dr. Kass' expert testimony would aid the Court in exercising its role as "gatekeeper" as

required under *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993) and its

progeny.  Defendant cites *Cargill v. United States*, 381 F.2d 849 (10th Cir. 1967) to

support its need for the grand jury transcript to impeach a witness or test his credibility.

*Id.* at 851.

In *United Startes v. Kerr*, Crim. No. 3:2007-3, 2008 WL 1711412 (W.D. Pa. Apr.

11, 2008), the District Court for the Western District of Pennsylvania considered the

production of grand jury transcripts prior to trial. Defendant made this motion based upon

the "scant information . . . contained in the Rule 16 material. . . ." *Id.* at *3.   In *Kerr*, the

court noted that "[i]n responding to such requests, courts have permitted such discovery

of grand jury witness' statements where it relates to possible 'dismissal of the indictment'

or 'prejudicial irregularities in the conduct of the grand jury' but not when a request for

transcripts is based upon 'pretrial discovery.'" *Id.* (quoting *United States v. Budzanoski*,

462 F.2d 443, 454-55 (3d Cir. 1972)).  The *Kerr* court declined to order the grand jury

transcripts produced based on the lack of Rule 16 material and the nature of the pre-trial discovery. *Id.* The particularized need for the grand jury testimony in this case is similar to that in *Kerr*. Essentially Defendant Salko requests pre-trial discovery on the basis that the Rule 16 disclosures by the Government is insufficient.

In the balancing test, Defendant's need for the grand jury transcript fails to outweigh the public interest in maintaining the secrecy of grand jury proceedings. The Third Circuit Court of Appeals has previously emphasized that secrecy in grand jury proceedings is "designed to protect from disclosure only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *In re Grand Jury Matter (Catania)*, 682 F.2d at 63 (quoting *In re Grand Jury Investigation*, 630 F.2d 996, 1000 (3d Cir. 1980)); *see also Procter & Gamble Co.*, 356 U.S. at 681-82 (finding one reason for secrecy to be " to encourage all witnesses to step forward and testify freely without fear or retaliation. . . . The grand jury as a public institution serving the community might suffer if those testifying today knew that the secrecy of their testimony would be lifted tomorrow."). The Supreme Court has also identified several other distinct interests in protecting the secrecy of grand jury proceedings:

> First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appeared before the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as to inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual grand jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assure that persons who are accused but exonerated by the grand jury

will not be held up to public ridicule.

*Douglas Oil Co.*, 441 U.S. at 219.  Here, the balance weighs in favor of the Government.

The interests in secrecy in the preindictment proceedings outweighs the Defendant's

interest in obtaining pre-trial discovery beyond that permitted by Rule 16.  Therefore, the

Court will deny Defendant Salko's request for the grand jury transcript of Dr. Kass.

**IV.     Motion for Leave to Take Videotaped Deposition in Lieu of Live**

**Testimony (Doc. 75)**

The Government filed a motion for leave to take a videotaped deposition in lieu of

live testimony at trial of Patient X.  (Doc. 75.)  Federal Rule of Criminal Procedure 15(a)

provides that "A party may move that a prospective witness be deposed in order to

preserve testimony for trial. The court may grant the motion because of exceptional

circumstances and in the interest of justice."  The movant bears the burden of proof in

demonstrating the necessity of the preserving the testimony. *United States v. Ismaili*, 828

F.2d 153, 159 (3d Cir. 1987).  The District Court retains considerable discretion in

determining the existence of "exceptional circumstances" to authorize a Rule 15(a)

deposition.  *United States v. DeGideo*, No. Crim. 04-100,  2004 WL 1535783, at *2 (E.D.

Pa. June 18, 2004).

The Government notes that Counts Eleven through Nineteen of the Indictment

relate to Defendant Salko's scheme to defraud Medicare with relation to Patient X in

2005.  (Doc. 1.)  In its brief, the Government states that Patient X is a seventy-seven (77)

year old woman residing at the Lackawanna Health Care Center in Olyphant,

Pennsylvania.  (Gov't Br. in Supp., Doc. 76 at 2.)  According to the Government, Patient

X suffered a fracture to her right heel in approximately early March of 2008, which required surgery and a period of hospitalization. (*Id.*)  Patient X's leg is casted, she is confined to a wheelchair, and her mobility is limited.  (*Id.*)  The Government further notes that the attending personnel at the Lackawanna Health Center did not expect her to be fully ambulatory for the start of trial, which at the time was June 2008.  Patient X suffers from a variety of additional ailments, including seizure disorder, gait dysfunction, hypothyroidism, hemi paresis (paralysis of the right side), multiple fractures to the right tibia, and tremors.  (Doc. 80 Ex. A.)

The Government argues that Patient X's health requires a video deposition as an "exceptional circumstance," and that doing so would "further the interest of justice."  In support of this motion, the Government offered a letter from the Lackawanna County Health Care Center stating that in their "professional and clinical opinions we strongly disagree with [Patient X] traveling any distance whether it is 1 mile or 100 miles.  The stress of traveling any distance is not in the best interests of her health and safety." (Doc. 80 Ex. A.)

In opposition, Defendant Salko argues that the Government has failed to articulate the requisite "exceptional circumstances" to justify the substitution of a videotaped deposition for live trial testimony.  Specifically, the Defendant references the 1975 Amendment to Rule 15, which explains the meaning of "exceptional circumstances" as follows: "The court may grant the motion if it appears that (a) the prospective witness will be unable to attend or be prevented from attending the trial, (b) the prospective witness' testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of justice."  *See United States v. DeGideo*, No. Crim. 04-100, 2004 WL 1535783,

at *2 (E.D. Pa. June 18, 2004).

Neither party argues that the testimony of Patient X is not material.  Her health care is the subject of Counts Eleven through Nineteen of the indictment.   Rather, the question is whether Patient X is sufficiently "unavailable" due to her medical conditions and whether the testimony is necessary to prevent a failure of justice.  Here, it appears that there is a failure of the first prong of the Rule 15(a) test.  Although Patient X suffers from a number of health conditions, she is not sufficiently unavailable to require the taking of a video deposition.  In this case, Patient X's broken heel is temporary, and not the type of limitation that should affect a person's ability to testify at trial.  Furthermore, as Defendant Salko notes in his brief, the Government stated that Patient X was "mentally alert, articulate, responsive to questions, and completely unaffected by the influence of drugs or pain medications" on the April 16, 2008 visit.  (Doc. 75 ¶ 6.)  Therefore, Patient X should be able to testify at trial.

Although the Government has provided a letter from a registered nurse and administrator at Patient X's care facility, no documentation has been submitted by any treating physician.  It is known that at some point, Patient X was diagnosed with breast cancer and required a mastectomy.  However, it is unknown if she is currently being treated for breast cancer or if her cancer is in remission.  It is also unknown whether she is currently suffering from any other illness.   Although a number of courts have held that a witness is unavailable pursuant to Rule 15(a) when the witness suffers from health problems, the problems must be demonstrated to the court as an exceptional circumstance.  *See United States v. Keithan,* 751 F.2d 9 (1st Cir. 1984) (elderly witness with back problems and heart condition could not leave his home); *United States v.*

*Furlow,* 644 F.2d 764 (9th Cir. 1981) ("ill" witness), *cert. denied,* 454 U.S. 871 (1981)*;*

*United States v. Dumas*, No. Crim. 91-00321-01, 1991 WL 274857 (E.D. Pa. Dec. 17,

1991) (permitting a Rule 15(a) deposition for a pregnant witness with complications);

*United States v. Konrad*, No. Crim. A. 4:95-CR-37HLM, 1996 WL 735566 (N.D. Ga. Nov.

27, 1996) (cardiac conditions sufficient to justify "exceptional" circumstances); *United

States v. Schwimmer*, No. 87 CR 423(s),  1987 WL 30635 (E.D.N.Y. Dec. 22, 1987)

(permitting video deposition when witness was gravely ill).

The exceptional circumstances which justify the taking of a video deposition do

not exist at this time.  The Government has failed to produce evidence from a medical

professional regarding Patient X's health status.  When asked if Patient X was still

suffering from cancer, the Government responded that it did not know.  Therefore,

exceptional circumstances do not exist in this case, and the Court will deny the

Government's motion to take a video deposition in lieu of live testimony.


**CONCLUSION**

For the reasons stated above, Defendant's motion to dismiss the indictment will be

denied.  However, the Court will bifurcate the sentencing enhancement portion of the trial

from the case-in-chief.  Defendant's motion for a bill of particulars will be granted in part

and denied in part.  The Government will be ordered to file a bill of particulars as to which

bills were false, with the dates and amounts of the reimbursement.  The motion will be

denied on all other grounds.  As to the discovery motions, the Court will order an *in

camera* review of certain grand jury transcripts and/or witness statements for *Brady*

statements.  The Court will deny Defendant's motion for Rule 16(a)(1) statements, and

for inspection of Peggy Rogers' clothing.  The Government will be ordered to produce the

names of the patients it plans to use for Rule 404(b) purposes.  The Court will deny the

Defendant's motion for Dr. Kass' grand jury transcript, as it is not authorized by the

Federal Rules of Criminal Procedure.  The Government's motion to take a video

deposition in lieu of live testimony of Patient X will be denied.

An appropriate Order follows.


August 26, 2008 _____     _____/s/ A. Richard Caputo_____
Date                                                        A. Richard Caputo
                                                              United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA,

NO. 1:07-CR-0286

v.

(JUDGE CAPUTO)

GREGORY J. SALKO,

Defendant.

## <u>ORDER</u>

**NOW**, this  26th   day of August, 2008, **IT IS HEREBY ORDERED** that:

(1)     Defendant Salko's motion to dismiss the indictment (Doc. 39) is **DENIED**. The Court will bifurcate the trial to separate the sentencing elements from the case-in-chief.

(2)     Defendant Salko's motion for a bill of particulars (Doc. 18) is **GRANTED IN PART** and **DENIED IN PART** as follows:

      (A)     Defendant's motion for a bill of particulars is **GRANTED** to the extent that the Court orders the Government to file a bill of particulars as to which claims were false, with the dates and amounts of the reimbursement.

      (B)     Defendant's motion for a bill of particulars is **DENIED** on all other grounds.

(3)     Defendant Salko's motion for discovery and inspection of physical evidence (Doc. 20) and motion to compel evidence as mandated by Federal Rule of Evidence 404(b) and *Brady v. Maryland*, 373 U.S. 83 (1963) (Doc. 71) are

38

**GRANTED IN PART** and **DENIED IN PART** as follows:

(A)   The Government is to submit the grand jury transcripts and/or witness statements of Danette McGirr, Loriann Manfre-Conahan and other employees of Whites Crossing Medical Group, Inc. for *in camera* review for *Brady* material.

(B)   Defendant's motion for Rule 16(a)(1) statements is **DENIED**.

(C)   Defendant's motion for Peggy Rogers' clothing is **DENIED**.

(D)   Defendant's motion for Rule 404(b) evidence is **GRANTED** to the extent that the Government is to produce the names of the patients which relate to the false claims allegedly submitted by Mr. Salko.

(E)   Defendant's motion for Dr. Kass' grand jury transcript is **DENIED**.

(4)   The Government's Motion for Leave to Take Videotaped Deposition in Lieu of Live Testimony (Doc. 75) is **DENIED**.


_____                    /s/ A. Richard Caputo_____
                                           A. Richard Caputo
                                           United States District Judge