**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| UNITED STATES OF AMERICA, | NO. 1:07-CR-0286 |
| v. | (JUDGE CAPUTO) |
| GREGORY J. SALKO, | |
| Defendant. | |

## MEMORANDUM

Presently before the Court is Defendant's Motion to Exclude Opinion Testimony from Dr. Rena Kass, Dr. John P. Brady, and Dr. Thomas Craparo. (Doc. 83). For the reasons stated below, the Court will grant in part and deny in part Defendant's motion as to Dr. Kass. The Government has stated that it will not call Dr. Brady as an expert. Therefore, the Court will deny as moot Defendant's motion as to Dr. Brady. The parties have agreed that a ruling regarding expert testimony from Dr. Craparo will be postponed until the sentencing phase of the bifurcated trial.

## BACKGROUND

On July 18, 2007 Defendant Dr. Gregory Salko was indicted for health care fraud in violation of 18 U.S.C. § 1347 and for false statements made in health care matters in violation of 18 U.S.C. § 1035. The charges relate to the care of Peggy Rogers and Patient X, who both suffered from breast cancer that was not detected until after they left Defendant's care. The Government alleges that Defendant made misrepresentations in the women's Progress Notes and billed Medicare for services not performed.

When the Government announced its intention to call Dr. Kass, Dr. Brady, and Dr. Craparo as expert witnesses at trial, Defendant objected to their testimony and requested a *Daubert* hearing.  Prior to the hearing, the Government announced it would not call Dr. Brady at trial.  A hearing was held on the admissibility of Dr. Kass' testimony.  After Dr. Kass' hearing, the parties agreed to postpone a hearing on Dr. Craparo's testimony until the sentencing phase of the bifurcated trial as his expert testimony is relevant only the possible sentencing enhancement under 18 U.S.C. § 1347.  *See U.S. v. Salko*, No. 07-cr-0286, 2008 WL 4006747, at *5 -*7 (M.D. Pa. Aug. 26, 2008) (holding "results in bodily injury or death" language of statute to be a sentencing enhancement and bifurcating trial).  At this time, the Court need only address Defendant's motion as to Dr. Kass' testimony.  The motion as to Dr. Kass has been fully briefed, argued, and is ripe for disposition.

**DISCUSSION**

The Government plans to offer the following opinions by Dr. Kass: (1) Peggy Roger's breast cancer tumor was readily detectable by breast exam on May 21, 2006; (2) Defendant's care of Ms. Rogers fell below generally accepted medical standards; and (3) Defendant's failure to give Ms. Rogers the proper care increased her risk of serious bodily injury.

Defendant argues that Dr. Kass' testimony should be excluded as inadmissible under Federal Rules of Evidence 702, 401, and/or 403.  The Court will address these Rules in relation to Dr. Kass' proposed testimony.

**I.     Federal Rule of Evidence 702**

The admissibility of expert testimony is governed by Federal Rule of Evidence 702. Rule 702 provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The U.S. Court of Appeals for the Third Circuit has established that Rule 702, as interpreted by *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), and its progeny includes "three distinct substantive restrictions on the admission of expert testimony: qualifications, reliability, and fit." *United States v. Mathis*, 264 F.3d 321, 335 (3d Cir. 2001). The proponent of the expert testimony bears the burden of establishing the reliability and admissibility of the expert's testimony by a preponderance of the evidence. *See Daubert*, 509 U.S. at 593 n. 10; *In re TMI Litig.*, 193 F.3d 613, 663 (3d Cir. 1999). Rule 702 embodies a liberal policy of admissibility. *Pineda v. Ford Motor Co.*, 520 F.3d 237, 243 (3d Cir. 2008); *In re Paoli R.R. Yard PCB Litig.*, 916 F.2d 829, 857 (3d Cir. 1990).

*A.     Qualifications*

The requirement that the proffered expert be qualified, "is liberally interpreted and includes 'a broad range of knowledge, skills, and training.'" *In re TMI Litig.*, 193 F.3d at 664 (quoting *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 741 (3d Cir. 1994)). The court must determine whether the expert's training and specialized knowledge are related to the

issues and evidence before the trier of fact, WEINSTEIN'S FED. EVID. § 702.04[1][b]. However, "it is an abuse of discretion to exclude testimony simply because the trial court does not deem the proposed expert to be the best qualified or because the proposed expert does not have the specialization that the court considers most appropriate." *Holbrook v. Lykes Bros. S.S. Co.*, 80 F.3d 777, 782 (3d Cir. 1996).

Dr. Kass is Surgical Director of the Breast Center at Penn State Milton S. Hershey Medical Center and Assistant Professor of Surgery in the Surgical Oncology Section at Penn State's College of Medicine.

Dr. Kass' opinion that Ms. Rogers' tumor was palpable in May 2006 is based in part on a calculation that combines measurements of the tumor from an August 2006 mammogram with a one hundred eighty (180) day average size doubling time.  Dr. Kass derived this average time from a 1997 article that appeared in the Journal of Surgical Oncology reviewing studies of tumor volume doubling times (TVDT), entitled *On the Growth Rates of Human Malignant Tumors: Implications for Medical Decision Making*. Defendant argues that Dr. Kass does not possess the specialized knowledge to qualify her as an expert on the growth rate of cancerous tumors.  Essentially, Defendant argues that Dr. Kass is a surgeon, not an oncologist or pathologist.

During a three year fellowship on the multi-disciplinary study of breast diseases at the University of Arkansas, Dr. Kass performed rotations in both oncology and pathology. Since 2004 she has specialized in surgical oncology; her practice centers on the diagnosis and treatment of breast cancer.  She testified that she treats between seventy-five (75) and one hundred (100) breast cancer patients a year and has performed up to one thousand (1,000) breast exams.  She has conducted extensive research and writing on

4

breast cancer, including on methods of diagnosis. Her extensive clinical and academic experience qualify her to opine on the detection and potential treatment of Ms. Rogers' breast cancer. That fact that an oncologist or pathologist may be more qualified to discuss tumor growth rates does not force the conclusion that a surgeon is unqualified. *See In re Paoli.*, 35 F.3d at 753-54 (under the liberal 702 standard, it was an abuse of discretion for trial court to preclude the testimony of a trained internist who has spent significant time reviewing the literature on PCBs to testify on whether PCBs caused illness in plaintiffs, even though she lacked expertise in more specialized fields like toxicology).

*B.    Reliability*

The three preconditions articulated in the text of Rule 702—sufficient facts or data, reliable principles and methods, and reliable application—were included in the 2000 amendments to the Rule in order to codify the requirement imposed by the Supreme Court in *Daubert* that the trial court assess the reliability of expert testimony before admitting it into evidence. WEINSTEIN'S FED. EVID. § 702.02[3]. The Court will address the these prerequisites in turn.

1.    Sufficient Facts or Data

Rule 702 requires that an expert's opinion be based on sufficient facts or data. To be sufficient, the expert must have a basis in fact rather than mere supposition for her opinions. WEINSTEIN'S FED. EVID. § 702.05[2][b]; *see also In re Paoli.*, 35 F.3d at 742 (expert opinion must be based on more than "subjective belief or unsupported speculation") (quoting *Daubert*, 509 U.S. at 590). Mere weakness in the factual basis of an opinion bears on the weight of the evidence, not its admissibility. *McLean v. 988011*

*Ontario, Ltd.*, 224 F.3d 797, 801 (6th Cir. 2000).

During Dr. Kass' *Daubert* hearing, she testified to several different factual bases underlying her opinion on when Ms. Rogers' tumor was detectable.  First, she opines that Ms. Rogers' tumor was about five centimeters (5cm) in May 2006 based on a calculation that utilizes tumor measurements taken from an August 2006 mammogram and a one hundred eighty (180) day TVDT derived from a data range provided in *On the Growth Rates of Human Malignant Tumors: Implications for Medical Decision Making*. Defendants attack the sample sizes of the studies providing Dr. Kass' TVDT data; her use of a one hundred eighty (180) day multiplier; and her use of only two dimensions to measure Ms. Roger's tumor (rather than the three needed to calculate volume).  These points, however, go to potential flaws Defendant may highlight at trial.  It is clear that Dr. Kass has a factual basis to support her opinion on the size of the tumor in May 2006, as opposed to mere conjecture.

Next, Dr. Kass opines that Ms. Rogers' tumor was likely slow-growing.  She bases this on several factors, including: the type of cancer, the presence of an estrogen receptor on the tumor, its constant size between August and November 2006, the patient's breast size, and medical literature on tumor growth rates.

Finally, Dr. Kass opines that the skin ulceration caused by Ms. Rogers' tumor and discovered when she was admitted to Marian Community Hospital in August 2006 was visible for at least a week prior.  She bases this opinion on measurements and a photo of the ulceration taken when Ms. Rogers was admitted to the hospital.

In each of the above opinions regarding the tumor's detectability, Dr. Kass takes

facts known about Ms. Rogers' condition at fixed points in time and applies her experience and/or research in her field to come to a conclusion. The Court finds her opinions are based on sufficient facts for purposes of Rule 702.

Dr. Kass also has a sufficient factual basis underlying her opinion regarding Defendant's deviation from the standard of care in Ms. Rogers' case. She testified that she reviewed Ms. Rogers' medical records for a time period covering June 2004 until her death in November 2006. These records include Progress Notes from Birch Hills nursing home, where Ms. Rogers was under Defendant's care from June 2004 to August 2006. Dr. Kass' review of these records and her observations on Ms. Rogers' condition after leaving Birch Hills give her a factual basis to opine on the quality of care Ms. Rogers received during that time period.

### 2.    Product of Reliable Principles and Methods

To be admissible under Rule 702, an expert's opinion must be the product of reliable principles and methods. An opinion is reliable if it is based on "good grounds," meaning, "on methods and procedures of science." *In re Paoli*, 35 F.3d at 744. "Good grounds" may exist even if the judge thinks better grounds exist that may lead to an alternative conclusion. *Id*.

Defendant argues that Dr. Kass' calculation of the size of Ms. Rogers' tumor in May 2006 is not based on reliable methods because there exists no reliable methodology for retroactively estimating the size of a tumor. Dr. Kass admitted on cross-examination that she knows of no studies that apply data on tumor growth rates to retrospectively predict a tumor's size at a certain time. Defendant also convincingly illustrated both at hearing and

7

in his briefs that scientific opinion varies on the predictability of TVDT and that there are many variables Dr. Kass does not account for which could lead to different conclusions. However, as Dr. Kass noted in her testimony, and as Defendant's point on conflicting scientific opinion underscores, TVDT is a topic being researched in the mainstream scientific community.  Indeed, the article on which Dr. Kass relies is a review piece culling data from a number of different TVDT studies.  While there may be no prescribed methodology for applying growth rate data retroactively, it does not seem that Dr. Kass attempts to break new ground simply by taking data derived from established methods and opining on how it might reflect on this case.  She applies a rational approach in a field where there is no absolute scientific certainty and thus the Court finds her methodology reliable.  Any deficiencies in her methods may be illustrated on cross-examination at trial.

As to Dr. Kass' other opinions, the Court notes that her opinion on when Ms. Rogers' skin ulceration was visible and on the likely slow-growing character of her tumor are based on knowledge gained from clinical experience and practice.  As discussed above, Dr. Kass has extensive experience in treating breast cancer and the Court finds an application of this experience to the facts of the present case constitutes "good grounds" for these conclusions.  Lastly, her opinion on the standard of care for a woman of Ms. Rogers' age is based on standards articulated by the American Cancer Society, American Medical Association, and the American College of Radiology, nationally recognized and respected institutions that regularly publish nationally-circulated scholarly and practitioner materials.  The Court finds that the application of their standards constitutes "good grounds" for Dr. Kass' conclusions.

3.  Reliable Application

For an expert's opinion to be admissible under Rule 702, she must have applied the principles and methodologies reliably to the facts of the case. However, the expert need not express certainty about her opinions to make them admissible. *See U.S. v. Mornan*, 413 F.3d 372, 381 (3d Cir. 2005) (finding no error in trial court's decision to allow expert's testimony and allow the jury to determine what weight to give her "less-than-certain" conclusions).

Dr. Kass' examination of Ms. Rogers' records results in two primary conclusions that Defendant contests: (1) Ms. Rogers' tumor was readily detectable by a competent breast exam between May and August 2006; and (2) Defendant's failure to provide adequate care increased her risk of serious injury or death.

At her hearing, Dr. Kass testified only that she is "fairly certain" and could testify "within reason" that the tumor was palpable during the relevant period. However, she need not consider her results infallible to admit them into evidence. *See id.* (finding no error in admitting testimony where expert answered "I think they are" to a question on whether her opinions were given "to a reasonable degree of scientific certainty"). Dr. Kass further testified that Defendant's failure of care increased Ms. Rogers' risk of injury because it deprived her of the chance for early detection. She admitted on cross-examination that she could not be sure whether Ms. Rogers' tumor would have been curable if discovered while under Defendant's care or what her treatment options would have been. Dr. Kass need not be certain that Ms. Rogers would have avoided injury altogether in order to testify that she more likely would have avoided injury if her tumor

9

were detected earlier.  As discussed above, Dr. Kass applied reliable methods and principles to facts known about Ms. Rogers' condition at fixed points in time to come to reasonable conclusions.  The Court finds that she satisfies the Rule 702 prerequisite of reliable application.

  *C.*  *Fit*

  Rule 702 requires that the challenged testimony "fit" the case, meaning that it assist the trier of fact to understand the evidence or to determine a fact in issue.  "This requirement is one of relevance and expert evidence which does not relate to an issue in the case is not helpful."  *In re TMI Litig.*, 193 F.3d at 670.  More is required than "bare logical relevance."  *In re Paoli*, 916 F.2d at 856.  "[A]dmissibility depends ... on a connection between the expert opinion offered and the particular disputed factual issues in the case."  *In re TMI,* 193 F.3d at 670.

  Defendant argues that Dr. Kass' opinions on both tumor detectability and the standard of care are irrelevant and thus do not meet the "fit" requirement.  Regarding the tumor detectability argument, the Government has argued that Dr. Kass' testimony regarding the period during which Ms. Rogers' tumor was detectable by a competent breast exam goes to proving that no breast exams were performed on the dates of the Progress Notes identified in the Indictment, which reference breast exams.[1]  This aids in

---

[1]  Defendant states in several submissions to the Court that he does not dispute that he did not perform breast exams on Ms. Rogers on the dates indicated in the Progress Notes.  (Def.'s Mem. in Supp. of Mot. 16, Doc. 84; Def.'s Reply Mem. 1, Doc. 107.)  An admission by Defendant, by stipulation for example, may act as evidence that aids in satisfying the Government's burden to prove essential elements of the offenses.  *See Old Chief v. United States*, 519 U.S. 172, 186 (1997) (citing Fed. R. Evid.

proving the charges in the Indictment that Defendant violated 18 U.S.C. § 1347 by "execut[ing] a scheme to defraud Medicare by billing for medical services ... that [Defendant] did not, in fact, provide, and by concealing the scheme from discovery by the preparation and retention of false Progress Notes." (Indictment 4, Doc. 1.)  It also aids in proving the charges in the Indictment that Defendant violated 18 U.S.C. § 1035 by "caus[ing] 9 Progress Notes containing false representations regarding detailed physical examinations ... to be created, signed, and maintained in Roger's medical files ...." (*Id*. at 7.)  The Court agrees that Dr. Kass' testimony would aid the trier of fact in determining whether Defendant executed a scheme to defraud a health care benefit program, an essential element of § 1347, and whether he made any "materially false, fictitious, or fraudulent statements or representations" or made or used any "materially false writing or document knowing the same to contain any materially false, fictitious, or fraudulent statement or entry[,]" an essential element of § 1035.

Defendant also argues that expert testimony on his alleged deviation from the standard of care—which the Government argues is relevant to the sentencing phase of

---

801(d)(2)(A)).  However, in absence of such an admission taking the issue out of contention, the Government is not excused from its constitutional obligation to prove every essential element of the crime beyond a reasonable doubt. *United States v. Jackson*, 368 F.3d 59, 76 (2nd Cir. 2004).  Moreover, the Government is not obligated to accept such a stipulation because, as a general rule, "the prosecution is entitled to prove its case by evidence of its own choice, or, more exactly, a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." *Old Chief*, 519 U.S. at 186-87.  As it stands, the Court cannot consider as undisputed fact that breast exams were not performed on Ms. Rogers on the dates in question.

11

trial—is irrelevant because the alleged fraud *itself* must have cause the harm in order to invoke the § 1347 sentencing enhancement and the proffered opinion does not make that connection.  This is a rehashing of Defendant's argument in his Motion to Dismiss the Indictment that the factual allegations against him are insufficient to support application of the § 1347 sentencing enhancement.  *Salko*, No. 07-cr-0286, 2008 WL 4006747, at *7.  In denying that motion, this Court found that the Government could attempt to prove Defendant's allegedly fraudulent scheme allowed the patients' preexisting conditions to worsen, resulting in death or serious bodily injury.  *Id*. at *8 -*9.  Dr. Kass' opinions on the period of time Ms. Rogers' tumor was detectable and the standard of care are directly related to this point because they go to establishing when the condition *could* have been detected by Defendant, when it *should* have been detected by medical standards, and the potential consequences of the failure to detect the tumor.

In sum, the Court finds that Dr. Kass' opinion on the detectability of Ms. Rogers' tumor "fits" and will assist the trier of fact as to the Government's case-in-chief as well as the sentencing phase of trial.  Dr. Kass' opinion on the standard of care received by Ms. Rogers as Defendant's patient meets the "fit" requirements as to the sentencing phase of trial.  As neither party argues that the standard of care is relevant to the case-in-chief, the Court will grant Defendant's motion to the extent that Dr. Kass will be permitted to opine on this topic only during the sentencing phase of trial.

## II.     Federal Rules of Evidence 401 & 403

For the same reasons he argues the proffered testimony regarding the standard of care is not relevant under the "fit" prong of the Rule 702, Defendant argues it is

inadmissible because it is irrelevant under Federal Rule of Evidence 401. Rule 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."

The "fit" requirement of Rule 702 is a higher standard of relevance than that required by Rule 403. *See In re Paoli*., 916 F.2d at 856 (702 requires more than "bare logical relevance"). Because the Court has already found Dr. Kass' testimony relevant under the higher standard, it follows that it is relevant under the lower Rule 403 standard.

In the alternative, Defendant argues that if the testimony on the standard of care is deemed relevant, it should be excluded under Federal Rule of Evidence 403. Rule 403 provides:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Defendant argues that the proffered testimony will confuse the jury, leading them to believe that they may find Defendant guilty based on a civil negligence standard. The Court finds no merit in this argument because it has already bifurcated Defendant's trial to avoid such confusion. As indicated above, Dr. Kass' testimony on the standard of care will be allowed to be presented only during the sentencing phase of trial. As such, it will not affect the jury's determination of Defendant's responsibility for the underlying offense.

**CONCLUSION**

For the above reasons, and in light of the strong preference of admissibility embodied in Rule 702, *In re Paoli*, 916 F.2d at 857, the Court finds that the Government has met its burden of establishing the reliability and admissibility of Dr. Kass' testimony. However, the Court will grant Defendant's motion to the extent that Dr. Kass will be permitted to opine on the standard of care received by Ms. Rogers as Defendant's patient only during the sentencing phase of trial.  Defendant's motion will be denied in all other respects.

Because the Government announced it will not call Dr. Brady, the Court will deny Defendant's Motion to Exclude his testimony as moot.  Because it is agreed between the parties that a hearing on Dr. Craparo's testimony will be postponed until the sentencing phase of trial, the Court need not rule on Defendant's Motion to Exclude his testimony at this time.

An appropriate Order follows.


October 22, 2008                             /s/ A. Richard Caputo
Date                                         A. Richard Caputo
                                             United States District Judge

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | NO. 1:07-CR-0286 |
| GREGORY J. SALKO, | (JUDGE CAPUTO) |
| Defendant. | |

## ORDER

**NOW**, this  22nd  day of October 2008, **IT IS HEREBY ORDERED** that:

(1) Defendant's Motion to Exclude the Opinion Testimony of Dr. Rena Kass (Doc. 83) is **GRANTED, in part**, and **DENIED, in part**, as follows:

   (a) Dr. Kass may opine on the standard of care received by Peggy Rogers while in the care of Defendant only during the sentencing phase of trial.

   (b) Defendant's motion is denied in all other respects.

(2) Defendant's Motion to Exclude the Opinion Testimony of Dr. John P. Brady (Doc. 83) is **DENIED** as moot.

(3) A ruling on the Motion to Exclude the Opinion Testimony of Dr. Thomas Craparo (Doc. 83) will be postponed until the sentencing phase of the bifurcated trial.

/s/ A. Richard Caputo
A. Richard Caputo
United States District Judge