## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**UNITED STATES OF AMERICA** :

                          :     **No. 1:07-CR-00286**

       **v.**                  :

                          :     **JUDGE CAPUTO**

**GREGORY J. SALKO,**         :

                          :     **ELECTRONICALLY FILED**

           **Defendant.**       :

_____

## REPLY MEMORANDUM IN FURTHER SUPPORT OF
## DEFENDANT GREGORY J. SALKO, M.D.'S
## OMNIBUS PRETRIAL MOTION IN LIMINE
_____

Sal Cognetti, Jr., Esquire
FOLEY, COGNETTI, COMERFORD &
    CIMINI
507 Linden Street, Suite 700
Scranton, PA  18503
(570) 346-0745

Attorney for Defendant,
Gregory J. Salko, M.D.

# **TABLE OF CONTENTS**

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.    The Government Should Be Precluded From Offering
      Any Exhibits Not Yet Identified . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.   The Government Should Be Precluded From Offering
      Opinion Testimony From Unidentified Experts . . . . . . . . . . . . . . . . 2

III.  The Government Should Be Precluded From Seeking To
      Elicit Opinions from Non-Expert Witnesses  . . . . . . . . . . . . . . . . . . . 2

IV.   The Government Should Be Precluded From
      Referencing or Introducing Evidence Concerning the
      Standard of Care or Alleged Deviations From the
      Standard of Care  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

V.    The Government Should Be Precluded From
      Referencing the Criminal Charges Filed in Lackawanna
      County, Dr. Salko's Ownership of Birch Hills Residence,
      Inc. and the Suspension of Birch Hills Residence, Inc.'s
      Personal Care Home License  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

VI.   The 2000 Letters from Corinne L. Lupold, LPN Are Inadmissible . . 5

VII.  The Government Should Be Precluded From
      Referencing Death or Serious Bodily Injury During the
      Case-In-Chief  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

VIII. The Government Should Be Precluded From Eliciting
      Opinion Testimony From Thomas J. Craparo, M.D. Prior
      to any Sentencing Phase . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

IX.   The Government Should Be Precluded From
      Referencing the Suspension of Dr. Salko's Medical
      License . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

X.    The Government Should Be Precluded From
      Referencing Any Aspect of Dr. Salko's Personal Life . . . . . . . . . . 10

XI.   Statistical Evidence Is Irrelevant and Inadmissible . . . . . . . . . . . . . 11

XII.  The Government Should Be Precluded From Offering
      Evidence Relating to Bills Submitted for Other Patients,
      in Other Facilities on Other Days . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

XIII. The Government Should Be Precluded From Suggesting
      That Ms. Rogers Was Neglected and Picture of Ms.
      Rogers Are Not Relevant and Should Not Be Admitted . . . . . . . . . 12

XIV.  The Government Should Be Precluded From Suggesting
      That Dr. Salko Billed For Providing Breast Exams to Ms.
      Rogers or Patient X . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XV.   The Government Should Be Precluded From Suggesting
      in Any Way That Electronic Medical Records Are
      Unreliable, Unlawful or Inappropriate . . . . . . . . . . . . . . . . . . . . . . . 14

XVI.  The Government Should Be Precluded From Suggesting
      in Any Way That Care Referenced in Uncharged
      Progress Notes Was Not Provided or Was in Any Way
      Substandard . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

XVII. The Government Should Be Precluded From Suggesting
      Incorrectly That Medicare Eligible Individuals Have an
      Entitlement To Certain Medical Care . . . . . . . . . . . . . . . . . . . . . . . . . 16

XVIII. The Government Should Be Precluded From Offering Hearsay
Statements Relating To Alleged Bruising on Ms. Roger's Breast . . 17

XIX.  The Government Should Be Precluded From Offering
the Summary Charts Identified as Government Exhibits
16 and 34 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XX.   The Government Should Be Precluded From
Referencing in the Case-In-Chief Treatment Rendered to
Ms. Rogers or Patient X After They Transferred Out of
Dr. Salko's Care . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XXI.  The Government Should Be Precluded From Suggesting
in Any Way That Ms. Rogers and Patient X Were Not
Competent . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

# **ARGUMENT**

### I.   **The Government Should Be Precluded From Offering Any Exhibits Not Yet Identified.**

The Government is correct that Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure imposes no time requirement for identifying exhibits.  The rule does, however, impose an unconditional obligation on the prosecution to identify "[u]pon a defendant's request" all documents and materials that may be used as trial exhibits or may be material to preparation of the defense.  Fed. R. Crim. P. 16(a)(1)(E)(i), (ii).  The Government should therefore be precluded from seeking to offer at trial any exhibits not yet identified and produced.[1]

### II.   **The Government Should Be Precluded From Offering Opinion Testimony From Unidentified Experts.**

The Government appears to concede that opinion testimony during its case-in-chief must be limited to those experts already identified and that no additional opinion testimony will be permitted.  (Gov't Opp'n Br. at 3-5.)  The Government is, however, wrong in suggesting that its expert witness disclosure

---

[1]  The Government suggests improperly that the defense has not acted in good faith in that no defense exhibits have yet been identified.  (Opp'n Br. at 2-3 & 3 n.2.)  As the Court ruled during the telephone conference on October 21, 2008, however, the defense has no obligation to produce exhibits until the exhibits are used at trial.

1

with respect to Gary Ross, M.D. is sufficient under Rule 16(a)(1)(G).  The autopsy report prepared by Dr. Ross is conclusory and does not include the "bases and reasons" for the opinions expressed therein, including the cause of Ms. Rogers's death.  Unless and until the Government provides a supplemental disclosure in accordance with Rule 16(a)(1)(G), the Government should be precluded from seeking to offer opinion testimony from Dr. Ross.  In addition, the Government should be precluded from seeking to offer opinion testimony from any other unidentified expert witness.[2]

### III.    The Government Should Be Precluded From Seeking To Elicit Opinions from Non-Expert Witnesses.

The Government declares that its witnesses from Highmark Medicare Services ("Highmark") "will testify to facts, not opinions," and then goes on to itemize a number opinions that the Highmark witnesses will be asked to give.  They include:  that "progress notes[] constitute part of the claim even though the notes are not physically submitted to Highmark"; "the use of CPT Procedure Codes"; "what representations were made in those claims, and when and why the

---

[2]  In an effort to streamline the case and eliminate the need to call Dr. Ross, the defense would be willing to stipulate (for use only in any sentencing phase) that Ms. Rogers died of metastatic breast cancer.

claims were paid"; and "whether, under the rules and regulations established by

Medicare, Highmark pays claims for E&M services when Highmark knows the

supporting progress notes, which indicate physical examinations were conducted,

are false and no examinations were performed."  (Opp'n Br. at 5-6.)[3]  The first,

second and third areas of inquiry require the Highmark witnesses to make

inferences based on facts outside of their personal knowledge and therefore

undoubtedly implicate opinion.  The last area of inquiry is based on a hypothetical

fact pattern and likewise implicates opinion.  All of these areas of inquiry involve

assertions of opinion and the Government should be precluded from asking the

Highmark witnesses to opine on these areas.

    The Government agrees that the Highmark witnesses may "not be

asked to express their views on whether Salko actually performed the services he

claimed to have rendered or whether his claims were false or fraudulent," (Opp'n

Br. at 6), and therefore questioning on these areas should be prohibited.  The

Government does not address the remaining issues raised in the defense motion in

---

[3]  The Government also proposes to call one or more witnesses from Highmark to "testify
to the thousands of claims submitted by Salko to Medicare for E&M services during FY 2005
and FY 2006."  (Opp'n Br. at 5.)  These other claims are obviously irrelevant and, for the reasons
set forth infra p. 11 and in the supplemental motion in limine and supporting brief which will be
filed this week, evidence pertaining to those other claims must be excluded.

limine and therefore should be deemed not to oppose the defense request that the

Highmark witnesses (and any other lay witnesses) be precluded from:  (a)

testifying concerning the propriety of the bills that were submitted; (b) testifying

concerning the propriety of Dr. Salko's record-keeping procedures; (c) offering an

opinion as to whether Dr. Salko actually performed the services referenced in the

Indictment; (d) offering an opinion as to whether the bills for services rendered to

Ms. Rogers and Patient X were properly substantiated; (e) offering an opinion as

to whether the bills were fraudulent; (f) conflating alleged deviations from

administrative billing or record-keeping requirements with fraud; and (g)

suggesting that any deviation from record-keeping or billing requirements equates

with or signifies fraud or illegality.  In addition, the Highmark witnesses should be

precluded from testifying or opining that there are time requirements associated

with Evaluation & Management codes in the CPT manual.

### IV.   The Government Should Be Precluded From Referencing or Introducing Evidence Concerning the Standard of Care or Alleged Deviations From the Standard of Care.

Intent on trying a medical malpractice case, the Government argues

that standard of care evidence is relevant to both the guilt-or-innocence phase and

any sentencing phase of the trial.  (Opp'n Br. at 6-7.)  The Court ruled on October

22, 2008 that the standard of care is not relevant to the guilt-or-innocence phase

and any references to the standard of care or alleged deviations therefrom should

therefore be excluded from the case-in-chief.  (See Mem. and Order (Doc. No.

164).) [4]

> **V.    The Government Should Be Precluded From Referencing the Criminal Charges Filed in Lackawanna County, Dr. Salko's Ownership of Birch Hills Residence, Inc. and the Suspension of Birch Hills Residence, Inc.'s Personal Care Home License.**

The Government offers no proper purpose for admitting evidence

relating to the suspension of Birch Hills Residence, Inc.'s personal care home

license, the state criminal charges filed in Lackawanna County against Dr. Salko

and others, or the plea bargains on those charges reached by Tom Brown and

Vince McGrath.  The license suspension and the state criminal charges filed

against Dr. Salko are plainly not relevant — and the Government offers no reason

---

[4] We believe the October 22 ruling resolves this issue and bars admission of standard of care evidence in the case–in–chief.  In any event, the Government is wrong in claiming that the standard of care evidence is relevant.  This case is not about "the actions" of Dr. Craparo and his decision to order a mammogram for Patient X is not probative of any fact that is of consequence to the criminal charges.  Moreover, to introduce the civil malpractice standard would only confuse the jury and create an unacceptable risk that jurors will conflate medical negligence with guilt.  The Government is also wrong in suggesting that the standard of care is relevant in any penalty phase.  The standard of care is in no way implicated by the sentencing enhancement in 18 U.S.C. § 1347.

for concluding otherwise.  Moreover, neither Mr. Brown nor Mr. McGrath has yet

been convicted of a crime and there is therefore no basis to implicate Rule 609 of

the Federal Rules of Evidence.[5]  Nor can the Government use bias as an excuse to

drag in the irrelevant state law charges.  If the terms of the plea bargains require

Mr. Brown and Mr. McGrath "to cooperate and testify against Salko on his state

charges," as the Government suggests in its brief, (Opp'n Br. at 8), then they may

exhibit bias <u>against</u> rather than <u>in favor of</u> Dr. Salko and it would be for Dr. Salko,

not the Government, to challenge their credibility under Rule 607.  In any event,

the state law charges and the license suspension are not relevant and should be

excluded.

## VI.    The 2000 Letters from Corinne L. Lupold, LPN Are Inadmissible.

The Government concedes that the letters from Ms. Lupold dated

December 5 and 20, 2000 are incomplete in that the attached "general medical

record documentation guidelines" and "E&M service documentation guidelines"

were not included in the marked exhibits, but claims that the letters are admissible

---

[5] Ignoring the plain language in Rule 609, the Government claims that the defense reads the rule in an "unrealistically narrow" fashion by insisting upon a conviction prior to admission of the guilty plea.  (Opp'n Br. at 8.)  It is the Government's reading of the rule that is unrealistic. Rule 609, by its plain terms, requires a conviction.

notwithstanding these omissions.  (Opp'n Br. at 10-12.)  This argument is flawed.

Rule 106 of the Federal Rules of Evidence plainly requires introduction of the

explanatory materials accompanying the letter.  More importantly, the letters are

not relevant.  The letters were sent years before Dr. Salko became the treating

physician for Ms. Rogers and Patient X and, not surprisingly, make no reference to

either patient.  Moreover, the letters were written before electronic records became

prevalent in the medical community.  Finally, contrary to the Government's

suggestion, nothing in the December 5, 2000 letter placed Dr. Salko on notice that

he could be charged with violating 18 U.S.C. §§ 1035 or 1347 if the "[s]ervices

rendered to Medicare beneficiaries [are not] accurately described when claiming

reimbursement from Medicare."  (See letter from C. Lupold dated December 5,

2000 (attached to Gov't Opp'n Br. as Ex. 1) at 2.)  The letter references other

statutory provisions and includes a citation to a civil case in which reimbursement

of an alleged overpayment was sought through a civil proceeding.  The letters are

simply not relevant and consequently should be excluded under Rule 402.


**VII.  The Government Should Be Precluded From Referencing
Death or Serious Bodily Injury During the Case-In-Chief.**


Hoping to the pollute this proceeding with inflammatory accusations

of neglect and abuse, the Government argues that it should be permitted to introduce evidence during the case-in-chief concerning Ms. Rogers's death and Patient X's mastectomy. (Opp'n Br. at 12-15.) This evidence, however, has no probative value during the guilt-or-innocence phase, a conclusion already reached by the Court.

The Court has already ruled that "evidence of the sentencing enhancement during the case-in-chief would be prejudicial to the Defendant" and required bifurcation in order to keep evidence relating to alleged "serious bodily injury" or death outside of the case-in-chief. (See Mem. and Order (Doc. No. 120) at 13.) Thus, evidence pertaining to the care and treatment rendered to Ms. Rogers and Patient X by other health care providers after they transitioned out of Dr. Salko's care is properly excluded from the case-in-chief.

The Government offers no compelling reason to reverse this decision. It cannot seriously be disputed that any alleged crime based on a physician's billing or preparation of progress notes is complete when the bills are submitted and the notes are prepared and therefore conduct occurring later is not relevant to the charged crimes. Care and treatment rendered later by other practitioners is plainly not relevant. The fact that Patient X underwent a mastectomy on August

7

25, 2005 has no probative value with respect to Dr. Salko's visits with that patient

on June 12, 2005, July 2, 2005 or July 17, 2005 and in no way tends to show that

entries in progress notes relating to those visits were false.  Nor is the subsequent

care rendered to Ms. Rogers relevant to the charged offenses.  The Government

claims that the subsequent treatment is necessary "to adequately explain" the

opinion of Rena Kass, M.D. that Dr. "Salko's progress notes must be false. . . ,"

but Dr. Kass has already been precluded from offering such an opinion.  (See

Transcript of Proceedings on September 12, 2008 at 35, ll.9-25.)  Moreover, any

opinion testimony from Dr. Kass that is permitted may be offered without

admitting details concerning Ms. Rogers's subsequent care and treatment.

        In summary, evidence relating to the consequences allegedly suffered

by Ms. Rogers or Patient X, including the cause of Ms. Rogers's death and the

surgical procedure elected by Patient X, and other evidence relating to the care and

treatment rendered to Ms. Rogers and Patient X by other health care providers

after transferring out of Dr. Salko's care is not relevant during the case-in-chief.

The Government should therefore be precluded from offering such evidence or

referring to subsequent treatment or medical care during the case-in-chief.[6]

---

[6]  Pursuant to the discussion during the telephone conference on October 21, 2008, the
defense will propose a stipulation intended to obviate any need for such evidence in the case-in-

### VIII. The Government Should Be Precluded From Eliciting Opinion Testimony From Thomas J. Craparo, M.D. Prior to Any Sentencing Phase.

The Government previously agreed not to solicit opinion testimony from Dr. Craparo during the case-in-chief, but now plans to do just that by asking Dr. Craparo abut "generally accepted, medical standards of care." (Opp'n Br. at 15.) Testimony concerning the applicable standard of care is opinion testimony. There can be no doubt that Dr. Craparo's observation concerning the standard of care — specifically, that an alleged failure to order a mammogram over an 18 month period deviates from the standard of care — constitutes opinion testimony. On the basis of its earlier representation, the Government should be precluded from seeking to solicit such opinion testimony from Dr. Craparo. Moreover, in accordance with the Memorandum and Order issued on October 22, 2008 (Doc. No. 164), evidence concerning the standard of care should not be permitted during the case-in-chief.

### IX. The Government Should Be Precluded From Referencing the Suspension of Dr. Salko's Medical License.

The Government agrees that Dr. Salko's voluntary surrender of his

chief.

medical license is not relevant[7] and therefore any reference to the license

suspension should be disallowed.

### X.   The Government Should Be Precluded From Referencing Any Aspect of Dr. Salko's Personal Life.

The Government concurs that Dr. Salko's personal interests, social

activities and family relationships are not relevant, but argues unreasonably that

his finances and "personal or sexual relationship[s]" may be probative of some

unspecified fact.  (Opp'n Br. at 16-17.)  The Government's bare proffer is

unconvincing.  Dr. Salko's personal finances and his personal relationships have

no bearing whatsoever on any issue in this criminal proceeding and, despite the

challenge by the defense, the Government has not offered any theory under the

which the evidence might be relevant.[8]  The evidence must therefore be excluded.

---

[7]  The Government suggests that the license suspension may become relevant "at some other point in the trial."  (Opp'n Br. at 16.)  It is not clear what the Government is referring to.

[8]  The Government claims that "it is conceivable a witness . . . may have a bias against Salko based upon a current or prior personal or sexual relationship."  (Opp'n Br. at 17.)  This unsupported allegation does not suffice for the showing of relevance required by Rule 402. Further, the prejudicial effect of introducing any such evidence would far outweigh any arguably probative value and for this reason the evidence should be excluded under Rule 403.

## XI.    Statistical Evidence Is Irrelevant and Inadmissible.

Notwithstanding the representation made at the oral argument on May 2, 2008, the Government seems to now be in agreement that peer comparison evidence has no relevance in this case and has agreed to redact all peer comparison statistics from the Government exhibits, including Exhibit Nos. 124 and 125.  It is not clear what the Government plans to redact and preserve and therefore the defense reserves the right to object to the admission of any amended statistical charts.  The Government should further be precluded from making any reference to peer comparison statistics or to Dr. Salko's position with respect to his peers.

## XII.    The Government Should Be Precluded From Offering Evidence Relating to Bills Submitted for Other Patients, in Other Facilities on Other Days.

Since the filing of the defense motion in limine, the Government has produced a number of additional exhibits in ostensible support of its "Impossible Day" theory.  For the reasons set forth in the supplemental motion in limine which will be filed this week, any alleged "Impossible Day" evidence is not relevant under Rule 401 or admissible under Rule 404(b) and should be excluded.

11

**XIII. The Government Should Be Precluded From Suggesting
That Ms. Rogers Was Neglected and Pictures of Ms. Rogers
Are Not Relevant and Should Not Be Admitted.**

The Government claims that the photographs of Ms. Rogers taken after her admission to Marian Community Hospital are relevant, but offers no compelling rationale for their admission.

Contrary to the Government's first argument, the photographs are not relevant to dispute the accuracy of entries in the progress notes relating to "skin and nails." (Opp'n Br. at 23.) Those notes do not specifically reference the skin on Ms. Rogers's breasts or feet or her toenails and, for this reason, the photographs of those areas of her body are not relevant.

The Government's second argument fares no better. The Government claims that the "photograph of the fluid stained brassiere . . . tends to prove the lesion had ulcerated long before [Ms. Rogers] entered the hospital." (Opp'n Br. at 24.) Dr. Kass testified otherwise. She confirmed that it was impossible to tell how long the breast lesion was ulcerated simply by looking at the photograph:

> Q. [by Mr. Brier]:  . . . [Y]ou testified a little bit about the picture of
> the bra.  And I don't know the government exhibit.
> You have no idea from looking at that bra how

12

> long — you can't tell by looking at the bra how
> long her breast had ulcerated prior to the picture
> —

A. [by Dr. Kass]:  No.

Q. [by Mr. Brier]:  — can you?

A. [by Dr. Kass]:  No.

(See Transcript of Proceedings on September 12, 2008 at 125, ll.15-23.)

Moreover, Dr. Kass admitted that she is not aware of any research study or other

authoritative work that supports the proposition that the palpability of a cancerous

tumor on a given date in the past can reliably be determined by looking at a

photograph of the outer aspect of the breast taken on a later date.  (Id. at 91, ll. 5-

14.)  The photographs are not relevant but are highly inflammatory and their

admission would pose a substantial risk of unfair prejudice to the defense.

In sum, the Government has not and cannot offer a proper purpose for

introduction of the photographs of Ms. Rogers taken upon admission to Marian

Community Hospital and the inflammatory photographs of her scalp, breast, feet,

toes and/or toenails, including Government Ex. Nos. 35-43, should be excluded.

Furthermore, the allegations of neglect[9] should be stricken from the Indictment

---

[9]  The Government offered no opposition to the defense argument that the charges of
neglect are irrelevant.

and the Government should be precluded from insinuating or suggesting that Ms.

Rogers was the victim of neglect.

**XIV.  The Government Should Be Precluded From Suggesting
That Dr. Salko Billed For Providing Breast Exams to Ms.
Rogers or Patient X.**

The Government announced that it "has no intention of suggesting to

the jury that [Dr.] Salko billed Medicare just for Peggy Rogers' breast exams."

(Opp'N Br. at 24.)  This is not enough.  The Government should also be precluded

from suggesting that any of the CPT codes employed here, i.e. 99331, 99334 and

99335, require a breast exam.  This conclusion is apparent from the face of the

CPT handbook and cannot seriously be questioned.

**XV.  The Government Should Be Precluded From Suggesting in
Any Way That Electronic Medical Records Are Unreliable,
Unlawful or Inappropriate.**

Apparently conceding the propriety of the use of electronic medical

records, the Government agrees that it will not argue or suggest that "electronic

medical records are inherently unreliable."  (Opp'n Br. at 24.)  The Government

should also be barred from suggesting incorrectly that electronic medical records

are unlawful or that a physician's use of electronic medical record software is in

14

any way inappropriate.

### XVI.    The Government Should Be Precluded From Suggesting in Any Way That Care Referenced in Uncharged Progress Notes Was Not Provided or Was in Any Way Substandard.

   The Government grossly misstates the charges in the Indictment when it claims that the alleged "schemes to defraud began when [Dr.] Salko first became the[] primary care physician" for Ms. Rogers and Patient X.  (Opp'n Br. at 25.) This is simply not true.  Count 1 of the Indictment charges an alleged scheme to defraud with respect to Ms. Rogers that was "devised and executed" "[b]etween May and September 2006" and Count 11 charges an alleged scheme to defraud with respect to Patient X that was "devised and executed" "[b]etween January and July of 2005."  (See Indictment (Doc. No. 1), Count 1, ¶ 13; Count 11, ¶ 6.)  The grand jury did not return any criminal charges based on medical care and treatment provided during any other period of time and the Fifth Amendment protects against any effort by the Government to expand the scope of the Indictment to include such charges.  Absent any reference in the Indictment to the other patient encounters between Dr. Salko and Ms. Rogers or Patient X (i.e. visits with Ms. Rogers during the period from June 17, 2004 to May 21, 2006 and visits with Patient X during the period from January 1, 2004 to November 28, 2004), the Government should be

precluded from suggesting or in any way insinuating that the treatment summarized in those notes was not provided or that the notes are inaccurate in any way.

**XVII.    The Government Should Be Precluded From Suggesting Incorrectly That Medicare Eligible Individuals Have an Entitlement To Certain Medical Care.**

In yet another attempt to try Dr. Salko for alleged offenses not charged in the Indictment, the Government seeks to expand the scope of the trial to include a charge that Dr. Salko executed and engaged in "a scheme to deny [Ms.] Rogers and Patient X a level of medical care they were entitled to receive." (Opp'n Br. at 26.) The Indictment includes no such allegation. Nor does the Government cite to any legal authority for the proposition that Ms. Rogers and Patient X were entitled to "a level of medical care" under Medicare. And the Government never explained what that "level of medical care" is. This new theory appears nowhere in the Indictment, was not approved by the grand jury and has no support in the Medicare statute or anyplace else. Accordingly, the Government should be precluded from suggesting incorrectly that Ms. Rogers or Patient X were "entitled" to a certain level of care or additional care by virtue of their participation in the Medicare program and should be precluded from advancing any theory of "two-sided" Health Care Fraud.

16

XVIII.        **The Government Should Be Precluded From Offering Hearsay Statements Relating To Alleged Bruising on Ms. Rogers's Breast.**

The Government is plain wrong in suggesting that the reference in Dr. DeMario's notes to alleged bruising on Ms. Rogers's breast is admissible under Rule 803(4).  That rule expressly conditions the admission of hearsay statements in medical records on a finding that the statements were "made for purposes of medical diagnoses or treatment" and allows the admission of those statements only "insofar as reasonably pertinent to diagnosis or treatment."  Fed. R. Evid. 803(4). The recorded notes of Dr. DeMario plainly fall outside the scope of Rule 803(4). As the notes themselves make clear, the diagnosis of breast cancer and widespread metastatic disease had already been made, it had already been concluded that Ms. Rogers's prognosis was poor and a palliative course of treatment was already selected.  Moreover, the statements undeniably constitute an attempt to attribute fault and, for this reason, are inadmissible under Rule 803(4).  See Fed. R. Evid. 803(4) at Advisory Committee Note ("Statements as to fault would not ordinarily qualify under this latter language.").)

Moreover, the statements attributed to Ms. Rogers are unreliable for at least three reasons.  First, other medical records predating the Dr. DeMario record

17

note that Ms. Rogers is a poor historian relating to the care provided to her at Birch

Hills Residence, Inc.  Second, a temporary guardian had by that time already been

appointed for Ms. Rogers based on an application from the Lackawanna County

Area Agency on Aging requesting that she be declared an incapacitated person.

Third, Ms. Rogers was heavily medicated at the time that she was being treated by

Dr. DeMario.  For all of these reasons and the other reasons set forth in our

opening brief, the statements attributed to Ms. Rogers are not reliable and should

be excluded.

### XIX.  The Government Should Be Precluded From Offering the Summary Charts Identified as Government Exhibits 16 and 34.

The Government's so-called "summary exhibits" (Ex. Nos. 16 and 34)

are nothing but argument.  The charts do not depict "voluminous writings . . .

which cannot conveniently be examined in court" and therefore fail the threshold

test of admissibility under Rule 1006.[10]  To the contrary, the charts represent the

---

[10] The progress notes at issue — 9 in the case of Ms. Rogers and 8 with respect to Patient X – can in no way be deemed voluminous within the meaning of Rule 1006.  The cases cited by the Government in its brief involve hundreds of documents and are not even remotely analogous to the situation presented here.  See, e.g., United States v. Bray, 139 F.3d 1104 (6th Cir. 1998) (more than 700 forms summarized); United States v. Petty, 132 F.3d 373, 378 (7th Cir.) ("computer-generated [telephone] records were cumbersome, difficult to read, and contained much irrelevant information"); United States v. Winn, 948 F.2d 145, 151 (5th Cir. 1991) ("multifarious sources of . . . facts and circumstances"); United States v. Duncan, 919 F.2d 981, 988 (5th Cir. 1990) ("hundreds of exhibits"), cert. denied, 500 U.S. 926, 111 S. Ct. 2036, 114 L. Ed. 2d 121 (1991); United States v. Pinto, 850 F.2d 927, 935 (2d Cir. 1988) ("66 wiretaps of

Government's effort to summarize in an argumentative fashion the evidence and

exhibits that it hopes to introduce and for this reason are not admissible.  See, e.g.,

United States v. Nguyen, 504 F.3d 561, 572 (5th Cir. 2007) ("Although the district

court may admit summary witness testimony in limited circumstances, this court

has repeatedly warned of its dangers.  We have stressed that the purpose of

summary evidence is not simply to allow the government to repeat its entire case-

in-chief shortly before jury deliberations.  Summary witnesses may not be used as a

substitute for, or a supplement to, closing argument.") (internal citations and

quotations omitted), cert. denied, 128 S. Ct. 1324, 170 L. Ed. 2d 135 (2008);

United States v. Grajales-Montoya, 117 F.3d 356, 361 (8th Cir. 1997) (holding that

Rule 1006 does not embrace a "summary" prepared by counsel depicting other

evidence and exhibits and explaining that "such a summary is a written argument"),

cert. denied, 522 U.S. 983, 118 S. Ct. 446, 139 L. Ed. 2d 382 (1997); United States

v. Buck, 34 F.3d 786, 790-91 (5th Cir. 2003).[11]  Moreover, the charts make

impermissible reference to the diagnosis and prognosis of Ms. Rogers and Patient

---

telephone calls placed to some 35 telephone numbers"), cert. denied, 488 U.S. 867, 109 S. Ct.
174, 102 L. Ed. 2d 143 (1988).  The other case cited by the Government did not involve
summary charts, but rather the proper interpretation of a chart appearing in an indictment.  See
United States v. Syme, 276 F.3d 131, 151 (3d Cir. 2002), cert. denied, 537 U.S. 1050, 123 S. Ct.
619, 154 L. Ed. 2d 525 (2002).

[11]  The Government argues in the alternative that its charts should be admitted under Rule
611(a).  (Opp'n Br. at 29.)  That rule, however, has no application to the issue presented here.

X which have no proper purpose in the case-in-chief.

## XX.     The Government Should Be Precluded From Referencing in the Case-in-Chief Treatment Rendered to Ms. Rogers or Patient X After They Transferred Out of Dr. Salko's Care.

The decision to bifurcate the case-in-chief from any sentencing phase was intended to avoid prejudicial spillover of evidence relating to consequences allegedly suffered by Ms. Rogers and Patient X.  (See Mem. and Order (Doc. No. 120) at 13.)  It follows that care rendered to Ms. Rogers (including care rendered by Marian Community Hospital, Community Medical Center and Holy Family Residence) after she was removed from Dr. Salko's care on or about August 23, 2006 and care rendered to Patient X (including care rendered by Mercy Hospital) after July 17, 2005 is not properly admissible in the case-in-chief.  Such evidence should be excluded.

## XXI.   The Government Should Be Precluded From Suggesting in Any Way That Ms. Rogers and Patient X Were Not Competent.

The Government points to no evidence that might in any way suggest that Ms. Rogers and Patient X were not competent while they were being treated by Dr. Salko, but nonetheless insists that it should be permitted to "advocat[e] any position, one way or another, regarding Rogers or Patient X's competency."

20

(Opp'n Br. at 30.)  This argument is absurd.  It is precisely the lack of evidence of incompetence that prompts this motion.  Since there is no proof that Ms. Rogers or Patient X were ever declared or deemed to be incompetent while under the care of Dr. Salko, the Government should be precluded from suggesting otherwise.[12]

## **CONCLUSION**

For the reasons set forth above, Dr. Salko respectfully requests that the Court grant his omnibus motion in limine.

Respectfully submitted,

/s/ Sal Cognetti, Jr.
Sal Cognetti, Jr.

FOLEY, COGNETTI, COMERFORD & CIMINI
507 Linden Street, Suite 700
Scranton, PA  18503
(570) 346-0745

Attorney for Defendant,
Gregory J. Salko, M.D.

Date: October 22, 2008

---

[12]  Almost as an after thought, the Government requests on the last page of its brief that the defense be precluded from making any reference to the instances in which Patient X (and presumably also Ms. Rogers) refused mammograms.  (Opp'n Br. at 30-31.)  This evidence is directly relevant to rebut the Government's suggestion that any failure to order a mammogram was a deviation from the standard of care and/or deprived the patients of a certain "level of care" to which they were allegedly entitled.  The Government offers no compelling argument to the contrary.

21

## CERTIFICATE OF COMPLIANCE
## <u>WITH LOCAL RULE 7.8(b)(2)</u>

I, Sal Cognetti, hereby certify that the foregoing Reply Memorandum in Further Support of Defendant's Omnibus Pretrial Motions In Limine is in compliance with Local Rule 7.8(B)(2). The brief contains 4,959 words as computed by WordPerfect 12.

<u>/s/ Sal Cognetti, Jr.</u>

Date: October 22, 2008

## <u>CERTIFICATE OF SERVICE</u>

I, SAL COGNETTI, JR., hereby certify that a true and correct copy of the foregoing Reply Memorandum in Further Support of Defendant's Omnibus Pretrial Motions in Limine was served by electronic mail upon the following counsel of record on this 22nd day of October, 2008:

                    Kim Douglas Daniel, Esquire
                    Assistant U.S. Attorney
                    Ronald Reagan Federal Building
                    228 Walnut Street
                    P.O. Box 11754
                    Harrisburg, PA   17108-1754

                              <u>/s/ Sal Cognetti, Jr.</u>